IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE



**MAHTAUB MOORE**, an individual

    Plaintiff.

    **v.**

Case No.    **23 - 988**

**COMPLAINT FOR RICO, FRAUD, CIVIL CONSPIRACY, COMMON LAW FRAUD, FRAUDULENT MISREPRESENTATION, BLACKMAIL AND EXTORTION**

**CURTIS MELVIN, an individual,**
**JONATHON R. MOORE, an individual,**
**MARGARET C. MELVIN, an individual,**
**LUCIA M. MOORE, an individual,**
**JOHN AND JANE DOES 1-10, individuals and**
**Corporations.**

    Defendants.

**DEMAND FOR JURY TRIAL**

## <u>COMPLAINT</u>

This Action (hereinafter the "Action" or the "Complaint"), brought by Plaintiff Mahtaub

Moore, brings this Complaint for fraud, racketeering , civil conspiracy, blackmail, extortion and

civil violations of the Federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §

1964(c) ("Federal Rico") and civil violations of the Delaware Organized Crime and Racketeering

Act, 11 *Del. C.* Ch. 15 ("the State R.I.C.O. Statute") against Defendants Curtis Melvin, Jonathon R.

Moore, Margaret Melvin, Lucia Moore, and John and Jane Does 1-10. Plaintiff seeks to recover

treble damages incurred as a result of Defendants' violations and alleges as follows:

### NATURE OF THE ACTION

1. This is an action alleging RICO, racketeering, fraud, civil conspiracy, common law fraud,

2. fraudulent misrepresentation, blackmail, and extortion, all arising from the Defendants

   actions for their unjust enrichment that was designed and implemented to defraud

   Plaintiff and interfere with her finances, deny her beneficiary inheritance, commit tax

   fraud and to harass.

3. Specifically, Defendants conspired and utilized the illegal use of technology tools they

   illegally possess to track, monitor, and pass information on credit, finances, and

   determine how and when to defraud Plaintiff and deny her rightful real property and

   liquid assets. Defendants used these tactics to track Plaintiff's finances and continued to

   perpetrate the family Enterprise herein known as Melvin/Moore Enterprise for tax

   avoidance. These technology tools were sold to a global credit reporting and data

   company, TransUnion, during the TLO, LLC federal bankruptcy sale in 2013 Case No.

   13-20853-PGH in the Southern District of Florida (Exhibit 1). Under that agreement all

   databases which were in Defendant's possession were to be transferred under Article 1

   section (viii) "any and all data…including but not limited to any and all copies,

   reproductions, embodiments or versions of any information or data (whether in

   electronic, human or machine readable or executable form or any other format) in the

   possession, custody or control of the Seller [TLO] or its representatives or that the Seller

   or its representatives otherwise has the rights to access." No replications held by third-

parties or other agents were to exist beyond TransUnion's possession and heirs of TLO, LLC for use by law enforcement and child abduction cases including organizations controlled by Asher's heirs. Defendant's particularly Defendant Curtis Melvin had been a former employee of Hank Asher, a cocaine smuggler later informant to the Federal Bureau of Investigation and founder of TLO, LLC and close friends of the late Hank Asher's daughters (Exhibit 2). Defendant's invaded Plaintiffs' privacy false light, public dissemination of private information in order to gain possession of assets rightfully Plaintiff's and undermine her financial future.

4. Defendant's conspired to defraud plaintiff financially by lying and creating false medical conditions, living expenses, other false expenses to defraud Plaintiff. These tax avoidance schemes were implemented by Defendant's use of shell corporations for foreign corporations, foreign funds, and to create false "expenditures" and deduction to unjustly enrich Defendants and to harm Plaintiff and the Internal Revenue Service.

5. This same shell corporation upon information and belief has several iterations of spellings that have been used consistently throughout a period of 20 years. These companies are also used for creating LLC's to hold foreign nationals assets including the assets of foreign leaders

6. Defendant's unlawful conduct included extortive threats by electronic communications in violation of 18 U.S.C. § 837 of for Plaintiff's non-compliance of demands made by Defendants to extort, threaten, and continue the enterprise scheme of fraud for their unjust enrichment.

7. Plaintiff has suffered severe physical and emotional distress due to Defendant's fraud, extortive threats, and conspiracy, including great financial loss.

## THE PARTIES

8.  Plaintiff Mahtaub Moore is an individual with a primary residence in the City of Wilmington, DE, New Castle County, Delaware. Plaintiff is a retired television producer and horse breeder.

9.  Defendant Curtis Melvin, resides in the State of Virginia at 1639 N. Harrison Street, Arlington, VA and is an employee with the U.S. Department of State as a researcher.

10. Defendant Jonathon R. Moore, resides in the State of New York at 134 Three Mile Harbor Road, East Hampton, NY 11937 and is an international lawyer with specializing in offshore asset protection. (Exhibit 2)

11. Defendant Margaret Melvin, resides in the State of Virginia at 1639 N. Harrison Street, Arlington, VA and is an employee at a human resources firm.

12. Defendant Lucia Moore, resides in the State of California at 285 Lee Street, Apt, 202, Oakland, VA 94610 and is a part-time family therapist.

13. Defendants John and Jane Does Numbers 1-10 are family members, friends, businesses, corporations and other agents of Defendants Curtis Melvin, Jonathon R. Moore, Margaret Melvin, and Lucia Moore who participated in the activities and knowingly allowed database technically to be illegally held and used by defendants as well as conspired to commit fraud, misrepresentation, blackmail and extortion as specified in this complaint including conspiracy.

## JURISDICTION AND VENUE

14. This Court has original subject-matter jurisdiction pursuant to 18 U.S C. § 1964 (c) and 28 U.S C. §1331 because this action arises, part under the Federal Racketeer Influenced and Corruption Organizations Act ("Federal RICO").
    .

15. This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs and there is complete diversity of citizenship between Plaintiff and Defendants.

16. This Court has personal jurisdiction over Defendant Curtis Melvin because Melvin purposefully directed actions at this forum to obtain conspire, organize, defraud, and extort Plaintiff. The exercise of jurisdiction over Melvin is reasonable at least because Melvin's actions were directed to Plaintiff in this Court's jurisdiction.

17. This Court has further personal jurisdiction over Melvin under 28 U.S.C. §1965(b) because in any action brought pursuant to the Federal RICO statute in a U.S. District Court, this Court may cause parties residing in another district to be summoned to that district if the 'ends of justice require" it. Given these facts, ad that no other district has personal jurisdiction over all defendants, the ends of justice require this Court to exercised personal jurisdiction over Melvin.

18. This Court has personal jurisdiction over Defendant Jonathon R. Moore because J.Moore purposefully directed actions at this forum to obtain conspire, organize, defraud, and extort Plaintiff. The exercise of jurisdiction over J. Moore is reasonable at least because Moore's actions were directed to Plaintiff in this Court's jurisdiction.

19. This Court has further personal jurisdiction over Jonathon R. Moore under 28 U.S.C. §1965(b) because in any action brought pursuant to the Federal RICO statute in a U.S. District Court, this Court may cause parties residing in another district to be summoned to that district if the 'ends of justice require" it. Given these facts, ad that no other district has personal jurisdiction over all defendants, the ends of justice require this Court to exercised personal jurisdiction over J. Moore.

20. This Court has personal jurisdiction over Defendant Margaret Melvin because M. Melvin purposefully directed actions at this forum to obtain conspire, organize, defraud, and extort Plaintiff. The exercise of jurisdiction over Melvin is reasonable at least because Melvin's actions were directed to Plaintiff in this Court's jurisdiction.

21. This Court has further personal jurisdiction over Margaret Melvin under 28 U.S.C. § 1965(b) because in any action brought pursuant to the Federal RICO statute in a U.S. District Court, this Court may cause parties residing in another district to be summoned to that district if the 'ends of justice require" it. Given these facts, ad that no other district has personal jurisdiction over all defendants, the ends of justice require this Court to exercised personal jurisdiction over Melvin.

22. This Court has personal jurisdiction over Defendant Lucia Moore because Moore purposefully directed actions at this forum to obtain conspire, organize, defraud, and extort Plaintiff. The exercise of jurisdiction over Moore is reasonable at least because Moore's actions were directed to Plaintiff in this Court's jurisdiction.

23. This Court has further personal jurisdiction over Lucia Moore under 28 U.S.C. §1965(b) because in any action brought pursuant to the Federal RICO statute in a U.S. District Court, this Court may cause parties residing in another district to be summoned to that district if the 'ends of justice require" it. Given these facts, ad that no other district has personal jurisdiction over all defendants, the ends of justice require this Court to exercised personal jurisdiction over Lucia Moore.

24. This Court has personal jurisdiction over Defendant's John and Jane Does 1-10 because they purposefully directed actions at this forum to obtain conspire, organize, defraud, and extort Plaintiff. The exercise of jurisdiction over John and Jane Does 1-10 is

reasonable at least because their actions were directed to Plaintiff in this Court's jurisdiction.

25. This Court has further personal jurisdiction over John and Jane Does 1-10 under 28 U.S.C. §1965(b).

26. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part if not the majority of the events giving rise to Plaintiff's claims occurred within this judicial district. Venue is further proper in this District pursuant to 18 U.S.C. §1965(a) because each defendant transacted financial, personal, communication electronic and personal means.

## FACTUAL BACKGROUND

27. Plaintiff is a retired television producer and horse breeder living in Wilmington, DE. She is married to a New York and District of Columbia trust lawyer, Jonathon R. Moore. They were married October 6, 2016 in New York City. During the months leading up to the marriage Moore's children and son-in-law, collectively Defendant's engaged in intimidation, blackmail, extortion, and fraud to prevent the marriage and to prevent Plaintiff's bequeath of almost $5,000,000 in assets. These methods included the use of illegal databases specifically TLO, LLC's currently owned by TransUnion and used exclusively under the federal bankruptcy sale of TLO, LLC for the Federal Bureau of Investigation in missing and abducted children and child predators.

28. During this period, Plaintiff was unaware that she would be employed in a corporation solely used for a tax avoidance scheme devised by Defendant's to siphon off income and take her personal expenses off as "business expenditures." Plaintiff as recent as August 2023 became aware of such a scheme and hired tax experts.

29. After Plaintiff's marriage, extortionist threats and the illegal use of

databases to uncover her financial and personal information were used to track the

marital finances, lines of credit, purchases of real estate holdings, and credit reports. The

TLO, LLC databases are known as one of the world's private data cache of personal

secrets and financial information (Exhibit 2). Defendants have had full access and illegal

possession since 2013 of the TLO, LLC treasure trove of data. Specifically, these

databases were illegally in the custody and used of Defendant's against a

federal bankruptcy order of sale of TLO, LLC to credit reporting agency TransUnion

December 2013. TLO, LLC's database Defendant's had been employed by TLO, LLC's

late CEO Hank Asher from that period to present and has remained close friends with

heirs to the $154 million federal bankruptcy sale of TLO, LLC to TransUnion, with the

late founder of TLO, LLC's owner's family. This included all data and replications and

copies as stipulated in the Amended and Restated Asset Purchase Agreement by and

between TransUnion Risk and Alternative Data Solutions, Inc. and TLO, LLC (Exhibit 3)

Further, the sale restricted any duplicates or replicas of the database to be used

exclusively for the Federal Bureau of Investigation, coordination with state and local

authorities and specifically for child endangerment and abduction cases. This

restrictions were part of the bankruptcy order selling TLO, LLC to TransUnion.

30. Defendant's obtained Plaintiff's private financial and personal information and

In the summer of 2016 and continued to disseminate the information again on and around

September 7, 2019 in an attempt to embarrass, harass, and tortiously interfere with her

marriage. These actions included relaying private financial information to real estate

agents in East Hampton, NY and neighbors formerly of Plaintiff's husband in

Washington, DC now in Mystic, CT. The Defendant's with John and Jane Does 1-10 orchestrated and devised schemes through a network of former neighbors and others where Plaintiff resides and vacations to gain financial and personal information invading Plaintiff's privacy and with the intent to defraud.

31. On and around September 7, 2019, Defendant's conspired to defraud Plaintiff by organizing fake medical expenses and other items deeming them either life-threatening including tens of thousands of dollars of "psychology therapy," jaw disorders, medical sleep apnea, gender transitioning for a spouse, and other fraudulent expenses all of which presently were later learned to be false.

32. Plaintiff was unaware that Defendant's submitting invoices was part of a family Enterprise known herein as the Moore/Melvin Enterprise to hive off Plaintiff's assets unjustly enrich themselves and use those funds as "corporate expenditures" thereby creating a tax avoidance scheme.

33. From September 2018-September 2019, Defendant's continued the conspiracy and committed acts of extortion an blackmail. Specifically, from July 2019-September 9, 2019, Defendant's phoned Plaintiff on her A T & T cell phone account demanding she not be physically present at a "family" event, those threats were extended to deny her family of never seeing grandchildren again, and continued to threaten to expose financials and undermine financial security given to her by her husband. Those calls were made to New York and Delaware from Ft. Walton Beach, FL where Defendants were vacationing. These threats were verified to have occurred by a relative of Melvin's Marcia Cohen, of Santa Barbara, California who is the heiress to Standard Meats in Texas.

34. Defendant's threats were a direct retaliation as Plaintiff began questioning and investigating these "life threatening" expenses and other payments made through Defendant's conspiratorial Melvin /Moore Enterprise.

35. After Defendants threats, Plaintiff suffered heart irregularities and required medical attention and suffered emotional distress. Plaintiff suffered an ischemic stroke requiring care during this time including residual trauma to her sight from the stroke.

36. During these periods Defendant's Curtis Melvin and Lucia Moore had minimal work with Melvin's job as the "expert" in North Korea Google mapping, was slated to be discontinued and proved to be useless. Melvin was a PhD candidate who dropped out before finishing his program. Upon information and belief, Melvin was waiting for a security clearance in August and September of 2019, and upon information and belief never disclosed to those conducting his security clearance his actions or possession of the TransUnion/TLO, LLC's database possession, acts and threats, nor was a complete and thorough security clearance conducted by interviewing other family members who would have alerted the investigators the family thought Melvin unstable and a risk. Further, if a proper security clearance had been done, Defendant Melvin would be considered an "at risk" person to who could potentially be "compromised."

37. Defendant's to the present, have continued to engage in a conspiracy to invade Plaintiff's privacy, defraud and extort. On and around June 2023, Defendant's estranged from the family and absent for seven years or invited to any visit in the vacation home, arrived around July 3, 2023. Plaintiff was threatened if she was present at the visit. These conversations were done through electronic means of email and cell phone to Plaintiff's Comcast Xfinity and A T & T accounts in Delaware.

38. On and around July 5, 2023, Defendants upon information and belief conspired to change family trust inheritances, Powers of Attorney, 401K plans, and other financial structures by orchestrating false letters to Plaintiff. During this period, Plaintiff had discovered hundreds of "invoices" and "corporate expenses" to the benefit of Defendant's which were false and unqualified as legitimate deductions.

39. On and around July 5, 2023, Plaintiff was informed Defendants had left the vacation home and a subsequent letter discounting and reversing Paragraph's 30's actions would be sent Federal Express. That letter would reverse the stripping of inheritance and place Plaintiff back to receiving the majority interest in accounts and real estate property totally approximately $5,000,0000 USD.

40. These assets included real property known as Hillcroft, with an address of 1 Wood Road, Wilmington, DE 19806 deeded under The One Wood Revocable Trust, Jonathon Moore, Trustee whose beneficiary owner is the Plaintiff. The approximate value of the estate is $1.8 million USD. Plaintiff holds the entire life insurance police through The Guardian as a Mortgage Security for the property guaranteeing upon her death the upkeep and pay off the mortgage. That policy currently has the One Wood Revocable Trust as the only beneficiary with a face value of $550,000.

41. The second real property assets compromised by the acts of Defendants is the 134 Three Mile Harbor Road, East Hampton, NY 11937 vacation or second home property, deeded under the Moore Family Trust, Jonathon R. Moore, Trustee, whereby Plaintiff holds a majority beneficiary interest which included 1/3 of the property and all other agreed on expenses would be given to Plaintiff. The approximate value of Plaintiff's share is $500,000 in the current market.

42. Defendant's acts caused another $2,500,000 in assets belonging to Plaintiff to be compromised through their continued blackmail, extortion, fraud, and misrepresentations. Those accounts are through Wells Fargo in a 401K account, Vanguard Investments, Janus, PNC Bank, as well as other mutual funds.

43. On and around July 16, 2023, Plaintiff wrote a notice of termination she would not be and never was an "employee" of the shell corporation utilized for the false payments, tax avoidance scheme, and should not be considered as such.

44. On and around July 30, 2023, conspired to continue their Melvin/Moore Enterprise by conspiring to remove Plaintiff from any financial assets by cutting off credit cards, closed bank accounts, and demanding Plaintiff be considered "an employee" of the shell corporation for the furtherance of their unjust enrichment and tax avoidance scheme.

## FIRST CLAIM FOR RELIEF
### Federal RICO 18 U.S.C. 1964(c)
### (All Defendants)

45. Plaintiff incorporates by reference and realleges paragraphs 1 through 44 set forth above.

46. Plaintiff alleges that Defendants' conduct, and the conduct of each Defendant named herein, constitutes "racketeering" as set forth in 18 U.S.C § 1964 (c). Specifically, Congress has defined "racketeering" to include wire fraud, fraud by means of electronic transmissions and over wire. The Defendants here engaged in multiple instances of fraud including twice submitting fraudulent invoices, false documents, and fraudulent communication to defraud Plaintiff.

47. As detailed below, Plaintiff alleges three different causes of action for federal RICO violations. In summary, Section 1962(c) provides relief against parties who engage in a

pattern of racketeering activity, Section 1962(a) provides relief against parties who use income and funds generated by fraud through a pattern of racketeering activities against the plaintiff, and Section 1962(d) provides relief against those who conspire to violate the racketeering laws. Defendants are liable under each of these three sections of the statute.

48. 18 U.S.C. § 1964(c) allows "any person injured in his property by reason of a violation of section 1962(c) of this chapter to "sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including any other reasonable relief.

## COUNT 1
### RICO Participation- 18 U.S. C. 1964 (c), 1962 (c)

49. Plaintiff incorporates by reference and realleges paragraphs 1-48 set forth above.

50. 18 U.S.C.§ 1962(c) makes it "unlawful for any person employed by or associated with any enterprise or individual action engaged in or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…" 18 U.S.C. § 1962(c). 18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or Associated with any enterprise engaged in, or the activities of which affect, interstate or f foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . " 18 U.S.C. § 1962(c).

51. Each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does hold, "a legal or beneficial interest in property."

52. Defendants' activities include at least two acts of racketeering activity since 2018.

13

Accordingly, Defendants' conduct constitutes a "pattern" of racketeering activity. 18
U.S.C. § 1961(5).

53. One such act took place on September 7, 2019 when Defendant's, in furtherance of the
Activities, purpose and scheme, falsely and fraudulently claimed
expenses for medical, psychotherapy, costs for home repairs, and other items without the
true nature of how funds were to be used with demands and threats to Plaintiff for non-
compliance including interfering with her finances and marriage.

54. A second such act took place on July 3-4 2023 when Defendant's in furtherance of the
of the activities, purpose and scheme falsely and fraudulently wrote letters and made
extortionist demands which would financially strip Plaintiff of all beneficiary policies, f
funds, for the furtherance of their own financial gain.

55. Other such acts are described further below. All of these acts were continuous
over the length of Plaintiff's marriage from 2016 to the present with specific acts on
July 21, 2016, September 7, 2019 through and specifically on dates July 3-the present.

56. At all times relevant hereto, beginning on or around each Defendant conducted and
participated in the affairs of the Melvin/Moore Enterprise through a pattern of
racketeering activity, in violation of 18 U.S.C. §1962(c).

57. On or around September 7, 2019, Defendants formed an association-in-fact
Enterprise, described herein, within the meaning of 18 U.S.C. § 1961(4).

58. The Defendant's consists of a group of "persons" associated together for the
common purpose of intentionally and willfully defrauding Plaintiff Moore, the Federal
Bureau of Investigation and the Federal Trade Commission by creating and conducting a
scheme to illegally use databases for the exclusive use of law enforcement and

disseminating private financial information starting in July 2016 but specifically actions undertaken from September 7, 2019 to the present for their financial gain and to undermine Plaintiff's financial health and interfere with her privacy including a scheme to defraud assets, interfere with her credit, and scheme to destroy any beneficiary accounts Plaintiff would inherit and are rightly hers.

59. The Defendants have formed an ongoing organization that functions as a continuing unit. This was created and used as a tool to effectuate Defendants' pattern of racketeering activity.

60. All Defendants agreed to and did conduct and participate in the conduct of the Plaintiff's marriage and financial affairs through a pattern of racketeering activity including schemes to commit financial fraud as defined by 18 U.S.C. § 1343, and for the unlawful purpose of intentionally defrauding Plaintiff.

61. The wire and banking fraud to participate in the tax avoidance scheme committed by Defendants is based on a scheme developed and carried out by the them wherein Defendant Curtis Melvin fraudulently used TLO, LLC's now owned by TransUnion, financial databases exclusively permitted only for the use by Federal Bureau of Investigation and against privacy and consumer financial information rules in violation of the Federal Trade Commission Consumer Protection.

62. The Federal Bureau of Investigation and the Federal Trade Commission were deceived by fraudulent and illegal use of these databases .

63. Defendant's failure to disclose the real use of funds to Plaintiff, the Federal Bureau of Investigation, and the Federal Trade Commission, and to how private financial information was disseminated and obtained was done intentionally and with full

knowledge of all relevant facts and was fraudulent.

64. Defendants used the electronic communications through cellular, email, and mail for the

transmission, delivery, or shipment of the following by the Defendants or third parties, all

of which are related to the Defendant's scheme and they were foreseeably caused to be

sent as a result of Defendant's continual and aggressive scheme:

-Threatening phone calls to Plaintiff's cellular phone account.
-Dissemination and distribution of Plaintiff's private financial information to third-
parties.
-Wires and fund transfers between Defendants.
- Email and telephone communications between Defendants to orchestrate threats against
Plaintiff.
-Scheming and organized the destruction of Plaintiff's reputation and financial well-being
by an aggressive plan to ensure her removal of all beneficiary accounts and property she
would have inherited totally almost $5,000,000 USD.
-Developing and implementing with the unjust enrichment the continual tax avoidance
scheme perpetrated to underreport income and use shell companies to take unqualified
deductions. Plaintiff was fraudulently induced by this scheme.

65. Defendants used the Internet and other electronic facilities to carry out the

funding scheme and to conceal their ongoing fraudulent activities.

66. At all times discussed herein, Defendants have been involved in a plan to scheme

or defraud; have had the intent to defraud and have willfully participated in the scheme to

defraud with actual knowledge of its fraudulent nature and with specific intent to defraud;

and could have reasonably foreseen that interstate wires would be used; and actually used

interstate wires and electronic methods to further Defendants' scheme.

67. The Defendants engaged in and affected interstate commerce by way of said

wire, bank, and tax fraud.

68. Defendants continued to assist Defendant Jonathon Moore engage in a tax avoidance

scheme whereby false expenses and unqualified deductions were claimed in order to

defraud Plaintiff and the Department of Treasury. These schemes were employed by

Defendants to assist in the unjust enrichment for the Defendants benefit and for the purpose of conspiring to defraud Plaintiff and the Internal Revenue Service, specifically by using family corporations to funnel funds which in turn would be expenditures and deductions without reporting income to the IRS.

69. The wire and fund transmissions described herein were made in furtherance of Defendant's scheme and common course of conduct.

70. To achieve their common goals, Defendants knowingly and willfully concealed from the public, the Federal Bureau of Investigation and the Federal Trade Commission, the Internal Revenue Service, and Plaintiff the unlawfulness of their conduct, which was committed at the instruction of, and through the directions of, Curtis Melvin, Margaret Melvin, Lucia Moore, and Jonathon Moore in furtherance of the conspiracy to defraud Plaintiff and the named government agencies.

71. To achieve their common goals, Defendants knowingly and willfully concealed from the public, the Federal Bureau of Investigation, the Federal Trade Commission, this Court and Plaintiff the unlawfulness of Defendant's conduct, which was committed at the instruction of, and through the directions of, Curtis Melvin, Margaret Melvin, and Lucia Moore.

72. As a direct and proximate consequence of the conduct of Defendants and each of Them as alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $2,500,000 said damages to be proven at the time of trial.

73. Because of Defendants' violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit,

enrichment and not the purposes solely expressed; b) Defendants utilized these funds with the intent of defrauding Plaintiff and the Internal Revenue Service c) Defendants scheme to use Plaintiff's assets for unjust enrichment using illegal databases for information regarding her credit and financial status defrauded and harmed Plaintiff and the Federal Trade Commission and the Federal Bureau of Investigation by utilizing databases for the exclusive use and ownership of government agencies to illegally distribute personal and private information to third-parties for their own gain; d) Defendants knew the funding scheme would hurt Plaintiff would be further used for tax avoidance purposes by shielding the income as "medical expenses" and fraudulently in furtherance of the tax scheme continued to send bills and request payments from Plaintiff which in turn Defendants knew would be used to take illegal expenditure deductions from shell corporations to avoid paying taxes which would result in liability and fraud to Plaintiff and the Internal Revenue Service.

107. Defendants knew the misrepresentations were materially false when made and intended Plaintiff would rely on the legitimacy of the expenses and the use of corporations Defendants conspired to use for their tax scheme and unjust enrichment using Plaintiff's assets.

**COUNT IV**
**BLACKMAIL AND EXTORTION**
**(All Defendants 18 U.S.C. 873)**

108. Plaintiff incorporates by reference all allegations 1-107 in this Complaint and restates them as if fully set forth herein. As set forth fully herein, Defendants conspired and committed Blackmail and Extortion Pursuant to 18 U.S.C. 873 and committed the

including reasonable attorneys' fees.

## Violation of 18 U.S.C. § 1962(a)

74. Plaintiff incorporates by reference and realleges paragraphs 1 through 61 set forth above.

75. 18 U.S.C. § 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).

76. As alleged in paragraph 64, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

77. As alleged in the preceding section, Defendants' conduct constitutes a "pattern" of racketeering activity. 18 U.S.C. § 1961(5).

78. At all times relevant hereto, beginning on or around October 21, 2018 and continuing at least through the July 6, 2023, Defendants received money and gained financial through the destruction of Plaintiff's beneficiary interest in funds and real property derived from a pattern of racketeering activity to use or invest a part of such income or the proceeds of such income in the establishment and operation of an enterprise that is engaged in, or the activities of which affect, interstate or foreign commerce, in violation of 18 U.S.C. § 1962(a).

79. As alleged in the preceding section, on or around September 7, 2019 through September Defendants formed the "Enterprise" to effectuate Defendants' pattern of racketeering

activity.

80. All Defendants agreed to and did use income from defrauding Plaintiff received directly from a pattern of racketeering activity to control, establish and operate their, which was engaged in and affected interstate commerce, including fraud as defined by 18 U.S.C. § 1343, and for the unlawful purpose of intentionally defrauding Plaintiff.

81. The fraud committed by Defendants is set forth in the preceding section and is incorporated by reference herein.

82. As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $5,000,000 said damages to be proven at the time of trial.

83. Because of Defendants' violations of 18 U.S.C. § 1962(a), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF
### (Defendant Jonathon R. Moore and John and Jane Does 1-10)

80. Plaintiff incorporates by reference and realleges paragraphs 1 through 81 set forth above.

81. Plaintiff alleges that Defendant J. Moore's and John and Jane Does' 1-10 conduct, and the conduct of each Defendantnamed herein, constitutes racketeering as . Specifically, Delaware has defined "racketeering" to include such acts as perjury and false swearing. The Defendant here engaged in multiple instances of perjury and false swearing, including tax filings to the Internal Revenue Service, and the Department of the Treasury, by giving false

information, not declaring income and inducing Plaintiff to be included in a tax scheme to defraud the named governmental agencies from 2019 through 2023.

82. Defendant Jonathon Moore and John and Jane Does 1-10 also submitted statements to these government agencies filed forms and did not properly report under the false pretense that the tax filings accurately and made false statements to further their scheme.

## COUNT II
## CONSPIRACY TO VIOLATE RICO PURSUANT TO 18 U.S.C. § 1962(d)
**(Defendants, Curtis Melvin, Jonathon R. Moore, Margaret Melvin, Lucia Moore, Defendants John and Jane Does 1-10)**

89. Plaintiff incorporates by reference and realleges paragraphs 1 through 88 set forth above.

90. This claim for relief arises under 18 U.S.C. 1962 (d) which provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

91. Defendants at all relevant times, is and has been a "person" within the meaning of these sections because each Defendant is capable of holding, and does hold, "a legal or beneficial interest in real or personal property."

92. At all times relevant hereto, beginning in or around September 7, 2019 and continuing at least through the filing of this complaint, each Defendant conducted and participated in the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. §1962 (d).

93. On or around September 7, 2019, Defendants formed an association-in-fact Enterprise, described herein as the Melvin/Moore Enterprise, within the meaning of 18 U.S.C. §1962 (d)

94. In violation of 18 U.S.C. §1962 (d), Defendants have, as set forth above, conspired to violate 18 U.S.C.§ 1962 (c). the conspiracy commenced as early as 2016 when the first use of illegal databases for the exclusive use by the Federal Bureau of Investigation continued through the filing of this complaint. Specifically the Melvin/Moore Enterprise commenced September 7, 2019. Defendants' conspired to disseminate Plaintiff's financial and credit information, extorted through threats and electronic communication, and defrauded Plaintiff by conspiring to unjustly remove her as beneficiary of real property and other assets.

95. One such act took place on May 2022, when Defendants known as the Melvin/Moore Enterprise conspired to claim false medical expenses and conspire to defraud Plaintiff with the purpose of gaining funds and defrauding Plaintiff.

96. A second, third, and fourth such act took place on July 3, 4, and 5th 2023, when Defendant's, in furtherance of the activities, purpose and scheme of the Enterprise, falsely and fraudulently filed the sent Plaintiff letters which would remove her as beneficiary of real property 1 Wood Road, Wilmington, DE 19806 and 134 Three Mile Harbor Road, East Hampton, NY, 11937, and accounts totally $5,000,000. The Melvin/Moore Enterprise calculated and conspired Plaintiff's removal from her vacation home by organizing a trip to East Hampton, NY, removing Plaintiff's clothing and other personal effects, and conspired to commit acts of extortion and
threats over Plaintiff's in order to gain financially and deprive Plaintiff of these assets.

97. As set forth above, each of the Defendants knowingly, willingly, and unlawfully agreed and combined to conduct or participate directly or indirectly in the conduct of the affairs and activities through a pattern of racketeering activity, including acts of bank and

electronic fraud and extortion in violation of 18. U.S.C. § 1341 and 1343. Defendants objectively organized their conspiracy of the numerous and substantial RICO violations by at least one member of the conspiracy by acts, words, and correspondence.

98. As set forth above, each Defendant committed at least one overt act of racketeering activity or other wrongful activity in furtherance of such conspiracy including the continual and constant practice to defraud Plaintiff of money and other property interests through threats and illegal use of electronic communication and databases to harm and defraud Plaintiff, the Federal Bureau of Investigation, and the Federal Trade Commission, and the Internal Revenue Service.

## COUNT III
### FRAUDULENT MISREPRESENTATION
**(Against Defendant Jonathon Moore and John and Jane Does 1-10)**

99. Plaintiff realleges each and every allegation set forth in Paragraphs 1-98 and incorporates them by reference herein as if fully set forth.

100. As stated above Defendant J. Moore made material misrepresentations in connection with tax deductions and expenditures from the unjust enrichment and fraud perpetrated by Defendants Curtis Melvin, Lucia Moore, and Margaret Melvin, and John and Jane Does 1-10. The misrepresentations include:

    a. Medical expenses were not accurate and false payments made to Defendants constituted fraud against the Plaintiff's assets.

    b. False claims made as to living expenses and other "family emergency medical issues" were false and true material facts not given to Plaintiff to protect her assets.

    c. Defendant J. Moore had structured a 100% wholly-owned corporation over 20

years ago with other iterations similar in name unbeknownst to Plaintiff whereby she would be made an employee. Plaintiff did no work for the corporation/sole member LLP owned by J. Moore.

d. These corporations and LLP's siphoned off income from one to another and took the false expenses as corporate expenditures which were not reported to Plaintiff or the Internal Revenue Service. Defendants J. Moore and John and Jane Does 1-10 were fully aware of this tax scheme and developed it to misrepresent the truth to Plaintiff.

e. This tax scheme was not incompliance with IRS rules and would be considered fraud on an intrinsic and extrinsic level.

f. Plaintiff was never informed and this was fraudulently misrepresented and not as Defendant J. Moore represented as a method to pay into Social Security quarters toward retirement.

g. Various corporations were used changing the employer names on Plaintiff's beneficiary assets to Plaintiff in furtherance of continuing the tax scheme. Defendant's J. Moore and John and Jane Does 1-10 masterminded the scheme by changing employer names from trust accounts and other trust assets including retirement plans and corporate accounts to defraud Plaintiff.

h. The actions above are found in IRS forms 5500 as the Profit Sharing Plan of Moore & Bruce which was to defraud Petitioner by the continual changing of EIN's and plan names.

i. Failing to disclose the true nature of the corporations and placing Plaintiff as an employee to perpetrate the family Enterprise put Plaintiff in a tax liability.

101. These misrepresentations and omissions by Defendants J. Moore and John and Jane Does 1-10 were known to them to be false and untrue.

102. Plaintiff relied on Defendants to be truthful and did not know Defendants J. Moore and John and Jane Does 1-10 were conveying false, misleading, and key material facts were omitted representing proper expenditures and deductions that would later constitute harm to Plaintiff and to the Internal Revenue Service.

103. The foregoing was a material misrepresentation made to Plaintiff that Defendants J. Moore and John and Jane Does 1-10 intentionally, knowingly, and with reckless disregard for the truth.

104. As a direct result, Plaintiff has been injured in his property by the fraudulent misrepresentations by having to either a) retain expert accountants and seek tax attorneys to amend past tax returns, b) may have fees and underpayment fees or back taxes if the amended returns are not accepted by the Internal Revenue Service to resolve fraud perpetrated by Defendants J. Moore and John and Jane Does 1-10. Defendant J. Moore's actions were outrageous and committed with willful disregard or indifference to Plaintiff and Plaintiff seeks punitive damages against Defendants J. Moore and John and Jane Does 1-10.

**COUNT III**
**COMMON LAW FRAUD**
**(All Defendants)**

105. Plaintiff incorporates by reference all allegations 1-104 in this Complaint and restates them as if fully set forth herein.

106. As set forth fully herein, Defendants made the following materially false representations to Plaintiff: a) expenses paid for by Plaintiff's assets were a sham and used for unjust

following acts:

    a)  Making threatening calls and communication to order and direct Plaintiff's whereabouts and physical presence. The first of this incidence occurring in 2016, a second incident on September 7, 2019, and the most recent in July 2023 or risk losing financial assets including real property totally $5,000,000.

    b)  Collecting, disseminating personal and financial information using illegal databases solely and exclusively for use by the Federal Bureau of Investigation and violating Federal Trade Commission rules on Consumer Protection. The use of TLO, LLC's former database now owned by TransUnion were utilized by Defendant's to intimidate, embarrass, and conspire to harm Plaintiff to third-parties and close associates.

    c)  Demanding and threatening Plaintiff's loss of financial assets by demanding Plaintiff continue a tax avoidance scheme, be an employee of a shell corporation, and demand Plaintiff's silence of the truth to government agencies including the Internal Revenue Service and other government agencies including the Federal Bureau of Investigation if questioned or subpoenaed. These threats took place on and around August 25-26, 2023.

    d)  Defendant's demanding Plaintiff's silence or risk retaliation to destroy Plaintiff's financial security in the amount of $5,000,000 on the knowledge Defendant's possessed an illegal database in violation of TLO, LLC's Federal bankruptcy hearing with the sole owner and purchaser being TransUnion under the banner and trademark TLOxp, which would be a violation of the Federal Bureau of Investigation's use for law enforcement and particularly missing children cases.

## JURY DEMAND

89. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury of all

issues so triable that are raised herein or which hereinafter may be raised in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1. Finding that all defendants are jointly and severally liable for all damage caused

to Plaintiff;

2. Awarding Plaintiff monetary damages in an amount not less than $5,000,000 said

amount to be proven at trial;

3. Awarding Plaintiff enhanced (treble) monetary damages pursuant to 18 U.S.C.

§ 1964(c), Delaware statutory law, and the common law of Delaware.

4. Awarding Plaintiff its litigation expenses, including reasonable attorneys' fees,

costs, and disbursements;

5. Awarding Plaintiff punitive damages in the sum of not less than $5,000,000 or

an amount otherwise to be decided by a jury; and

6. Granting such other relief as the case may require or as may be deemed proper

and equitable.

Respectfully Submitted

Dated: September 7, 2023

By: _____
Mahtaub Moore
*Pro Se*
1 Wood Road
Wilmington, DE 19806
703-946-3704
M22strategies@gmail.com