## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE



**MAHTAUB MOORE,**

     *Plaintiff,*

     v.

**CURTIS MELVIN, an individual,
JONATHON R. MOORE, an individual,
LUCIA M. MOORE, an individual, JOHN
AND JANE DOES 1-10, Individuals and
Corporations.**

     *Defendants.*

C.A. No: 1:23-cv-00988 (GBW)

### PLAINTIFF'S OPENING BRIEF IN SUPPORT OF THE REQUEST FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AND PROTECTIVE ORDER

Mahtaub Moore
/s/ *Mahtaub Moore*
*Plaintiff, Pro Se*
1 Wood Road
Wilmington, DE 19806
M22strategies@gmail.com
703-946-3704

Dated: March 11, 2024

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT………………………………………………………...5

STATEMENT OF FACTS……………………………………………………………...9

ARGUMENT…………………………………………………………………………...11

      I.     LEGAL STANDARD………………………………………………………...11

          1.  Plaintiff Has Demonstrated Likely Success on its Claims for RICO Fraud, Misrepresentation, Fraudulent Inducement, Conspiracy, Common Law Fraud, Blackmail and Extortion…………………………………………………………11

          2.  Injunctive Relief is Available to Private Litigants in Civil Federal RICO Actions………………………………………………………………………..12

          3.  Plaintiff Shall Suffer Irreparable Harm Absent the Grant of Injunctive Relief, the Temporary Restraining Order, and Constructive Trust………………..12

          4.  On Balance, Should the Temporary Restraining Order, Injunctive Relief And Appointment of Plaintiff as Agent, Defendant's Would Face No Harm Yet Plaintiff Would Suffer Irreparable Harm………………………………….12

          5.  The Issuance of a Constructive Trust Order is an Equitable Remedy To Prevent Unjust Transfer …………………………………………………14

          6.  If Injunctive Relief is Granted, Defendant's Would Face No Harm Plaintiff Would Suffer Irreparable Harm……………………………………14

          7.  The Issuance of a Protective Order is Necessary to Protect Plaintiff under 18 U.S.C. 249 § 241 from Ongoing Threats…...…………………………..17

CONCLUSION………………………………………………………………………..17

## **TABLE OF AUTHORITIES**

**Cases**

*Adams v. Freedom Forge Corp., 204 F. 3d 475, 484 (3d Cir. 2000)*

*American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.* 42 f. 3d 1421, 1427 n.8
   (3d Cir. 1994)

*Bennett V. Berg*, 685 F. 2d 1053, 1064-65 (8th Cir. 1982, aff'd on reh'g, 710 F. 2d 1361
   (8th Cir. 1983)

*Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 568-69 (S.D.N.Y. 2014)

*Icahn P'rs LP v. Amylin Pharms., Inc.*, 2012 WL 1526814 (Del. Ch. Apr. 20, 2012)

*In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 351 (S.D.N.Y. 2007)

*In re Managed Care Litig.*, 298 F. Supp 2d 1259, 1282-83 (S.D. Fla. 2003)

*In re Netia Holdings v. Finova Gp. Inc. (In re Finova Gp. Inc.)*, C.A. No. 07-480-JF, 2007
   U.S. Dist. LEXIS 80577, at *4-5 (D. Del. Oct. 31, 2007)

*In re Tribune Co.*, 477 B.R. 465, 476 (Bankr. D. Del. 2012)

*In re Uniflex Inc.*, 319 B.R. 101, 104 (Bankr. D. Del. 2005)

*Kos Pharm., Inc. v. Andrx Corp.*, 369 F. 3d 700, 727 (3rd Cir. 2004)

*Kypohon, Inc. v. Disc-o-Tech Med. Techs. Ltd.*, 2004 U.S. Dis. LEXIS 25170, at *16-17
   (D. Del. Dec. 10, 2004)

*M. Rae, Inc. v. Wolf*, 509 F. Supp. 3d 235, 244 (M.D. Pa. 2020)

*McMahon v. New Castle Associates*, 532 A.2d 601(opinion/2377575/mcmahon-v-
   new-castle-associates/), 608-609 (Del Ch. 1987).

*Miller v. Mitchell,* 598 F. 3d 139, 147 (3rd Cir. 2010)

*Motorola Credit Corp. v. Uzan*, 202 Supp. 2d 239, 243-44 (S.D.N.Y. 2002)

*Nat'l Small Bus. United v. Yellen*, No. 5:22-cv-01448-LCB (N.D. Ala. 2022)

*Ramsay v. Nat'l Bd of Med. Exam'rs*, 968 F. 3d 251, 262 (Cir. 2020)

*Rubin v. Pringle (In re Focus Media, Inc.)*, 387 F. 3d. 1077, 1086 (9th Cir. 2004)

*TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC, 929 F. Supp. 2d 1255, 1262 (M.D. Fla. 2013) (citing Bender v. CenTrust Mortg. Corp. 51 F. 3d 1027, 1029 (11th Cir. 1995)*

*T.W. v. S. Columbia Area Sch. Dist.,* 2020 Dists. LEXIS 176429 at *6-7 (M.D. PA. Sept 25, 2020).

**Rules**

Fed. R. Civ. P 26…………………………………………………………………………….

Fed. R. Civ. P. 10…………………………………………………………………………..

Fed. R. Civ. P. 65…………………………………………………………………………..

## PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 65 and 26, Plaintiff, Mahtaub Moore (Plaintiff) submits this Opening Brief in Support of its Application for Temporary Restraining Order, Preliminary Injunction, and Protective order issuing a Constructive Trust over assets to hinder Defendants' fraudulent transfer of specific assets and protection of Plaintiff from harassment and threats attempting to intimidate with the goal of Plaintiff withdrawing the original Complaint. Plaintiff respectfully moves this Court for entry of a temporary restraining order, a preliminary injunction enjoining, and restraining Defendants from obfuscating, transferring, and hiding all assets specifically relating to Plaintiff's complaint including Defendants' IOLTA accounts used to hide personal assets and comingle foreign beneficial owners classified as politically at risked persons and are currently defendants in U. S. District Court in the District of Columbia C.A. 1:24-cv-00278 alleging "Defendants Masoud Barzani, Masrour Barzani, and Waysi Barzani, and others, and the guidance of their retained Washington D.C. counsel, lobbyists, and representatives acting within the scope of their employment or office, and widely circulated media reports, and public designations of these organizations as foreign terrorist organizations, were appreciably and unambiguously more than "generally aware" they were engaged in illegal activity.[1]" Plaintiff holds direct knowledge and evidence all defendants in the U.S. District Court District of Columbia case are clients of Defendants and have utilized the shell corporation of Ingomar Fiduciary Services, Inc. to funnel illicit funds and businesses  the United States; all structured and schemed by Defendants.  The injunctive relief requested encompasses domestic and international offshore corporate and trust accounts, the amending and revoking all trusts and trust bank accounts related to the properties as outlined in the original complaint including real property in the One Wood Revocable Trust, Moore Family Trust, accounts at PNC

---

[1] **Attached hereto as Exhibit A**

# PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 65 and 26, Plaintiff, Mehrab Moore (Plaintiff) submits this Opening Brief in Support of his Application for Temporary Restraining Order, Preliminary Injunction, and Protective order issuing a Constructive Trust over assets to hinder Defendants' tendulous transfer of specific assets and promotion of Plaintiff from harassment and duress attempting to intimidate with the goal of Plaintiff's withdrawing the original Complaint. Plaintiff respectfully moves this Court for entry of a temporary restraining order, a preliminary injunction enjoining, and restraining Defendants from obfuscating, transferring, and hiding all assets specifically relating to Plaintiff's complaint including Defendants' IOLTA accounts used to hide personal assets and commingle foreign beneficial owners classified as politically at risked persons and are currently defendants in U.S. District Court in the District of Columbia C.A. 1:23-cv-00278 alleging ("Defendants Masoud Barzani, Mostrom Barzani, and Wayej Barzani, and others, and the guidance of their retained Washington D.C. counsel, lobbyists, and representatives acting within the scope of their employment or office, and widely circulated media reports, and public designations of these organizations as foreign terrorist organizations, were appreciably and unambiguously more than "generally aware" they were engaged in illegal activity."[1] Plaintiff holds direct knowledge and evidence all defendants in the U.S. District Court District of Columbia case are clients of Defendants and have utilized the shell corporation of Imperia Fiduciary Services, Inc. to funnel illicit funds and businesses, the United States, all structured and schemed by Defendants. The injunctive relief requested encompasses domestic and international offshore corporate and trust accounts, the amending and revoking all trusts and trust bank accounts relate to the properties as outlined in the original complaint including real property in the One VA and Revocable Trust, Moore Family Trust, accounts at PNC

---

[1] Attached hereto as Exhibit A.

Bank, Wells Fargo, Vanguard, Chartwell, and any and all investment and retirements accounts associated with Plaintiff's Complaint.  Plaintiff requests injunctive relief of $450,000 placed in escrow with this Court to maintain the status quo of real property as Defendants have deliberately and methodically engaged in neglect of the real estate holdings to dissipate and devalue their worth with an estimated upkeep and immediate repair of approximately $100,000. Plaintiff also requests relief prohibiting and enjoining Defendants from using Plaintiff's social security number to file fraudulent returns and payroll statements to local, state, and federal agencies in a habitual tax avoidance scheme with the Department of Treasury associated Plaintiff with corporations involved with masking beneficial owners of bank accounts and other umbrella corporations. [2] More disturbing, Plaintiff on March 8, 2024 received threats with a suspicious large package dropped on the doorstep with the words "Die" and other hate speech currently under investigation by the City of Wilmington Police and federal authorities.

This extraordinary requested relief is required pursuant the applicable legal standards set forth herein because:

1. The use of Plaintiff for tax avoidance schemes and money laundering by Defendants including circumventing the Foreign Agent Registration Act, the IRS, and the U.S. Patriot Act,  continues to the present day alleged in Plaintiff's Complaint with the issuing of a false W-2 for tax year 2022 and recently for 2023.[3]

2. Plaintiff will be <u>irreparably harmed</u> by the continued unauthorized association of

---

[2] **Attached hereto as Exhibit B.** Defendant's continue use Plaintiff's address in Delaware for their enterprise. Plaintiff as recently as February 2024 has received from Defendants a fraudulent W-2 for tax period 2023 to continue to associate Plaintiff with Ingomar Fiduciary Services, Inc. a shell corporation with ownership by Defendants to be used as an umbrella as alleged in Plaintiff's Complaint for organizing in Delaware corporations and opening bank accounts for unqualified beneficial owners under FinCen Dept of Treasury and US Patriot Act rules.

[3] Attached hereto as **Exhibit C**

Defendants' corporations for the use of tax avoidance, money laundering, and fraud with those entities used for purposes of circumventing U.S. Department of Treasury rules and laws stemming from the Foreign Agent Registration Act, IRS, and U.S. Patriot Act. Plaintiff's irreparable harm is supported by former Philadelphia FBI executive and forensic accountant Jeff Lampinski's report to Plaintiff on Defendant's actions.[4]

3. Plaintiff will also be irreparably harmed by irretrievable funds and the transfer of Real property and the transfer of assets under the exclusive direction of Defendants to untraceable third- party corporations, trusts and accounts leaving Plaintiff with no viable recourse. Plaintiff, upon information and belief, Defendants' ties to Philean Trust Company in the Channel Islands, and the Winchester Global Trust Company in Hamilton, Bermuda  continue to harbor Defendants' funds and are representatives of Defendants. These offshore corporations also hold trust instruments devised by Defendants. Many of these corporations as alleged by Plaintiff irreparably places Plaintiff in the center of these corporations as unwilling an employee and participant in immigration and worker's immigration visa fraud due to Defendant's continued fraudulent use of Plaintiff's home address for the application to Department of Homeland Security Immigration Services for immigration worker's visa's.[5]

4. On March 8, 2024, Plaintiff received threats with a suspicious large packaged left at the door step. The City of Wilmington Police responded with requests from their supervisor and the bomb unit; around 9 officer and support vehicles responded to

---

[4] Attached hereto as Exhibit D
[5] Attached hereto as Exhibit E

Plaintiff's address of 1 Wood Road, Wilmington, DE 19806 one of the properties

involved in this case. The package had messages and hate speech including "Die" and

images of Swastikas and other threats. The case is open and ongoing under

case number 30-24-17432 with a forensic team securing the evidence and removed

to the precinct for further examination.  A protective order is needed to

protective Plaintiff for the duration of this case as Plaintiff has personal knowledge

some the beneficial owners had been detained in Europe for attempted murder and

threatening opponents. Defendants', specifically the PNC bank accounts, have used

the shell corporations to conceal and hold funds illegally in the United States.[6]

As detailed in Plaintiff's original Complaint and Motion for Leave to Amend

(incorporated herein, as if set forth at length),[7]  Defendant's conspired to defraud plaintiff by

"defrauding Plaintiff creating false medical conditions, living expenses and creating tax

avoidance and scams unwittingly using Plaintiff as an "employee[8]." In addition, Plaintiff was

utilized to create false expenditures whereby Defendants used shell corporations for foreign

corporations, foreign funds, establishing bank accounts in violation of the Department of

Treasury, FinCen, and U.S. Patriot Act rules on declaring beneficial owners, circumvent

disclosure requirements of the Foreign Agent Registration Act, and continued to harass,

threaten, blackmail, and exploit Plaintiff.  Defendants' long-term clients, the Barzani family from

Northern Iraq, have utilized Defendants as consultants, bookkeepers, family financial service

Providers. Plaintiff has direct knowledge Defendants' actions using corporations whereby money

transfers triggered PNC Bank to file Suspicious Activity Reports (SAR) to FinCen due to wire

and funds transfers from nefarious and suspicious

---

[6] **Attached hereto as Exhibit F**
[7] FED. R. CIV. P. 10(c).
[8] Plaintiff's Original Complaint ¶¶ 26

accounts. [9] Defendant's since the filing of Plaintiff's original Complaint, continue to work fervently overseas attending conferences for the continual business development of using those companies to promote fraudulent access to Plaintiff's home for worker's visas at such conferences in Europe named Eurojuris headquartered in Brussels, Belgium. Plaintiff has direct knowledge Defendants, after the January 30, 2024 lawsuit against their clients, alleging money laundering and terrorist funding, traveled overseas in February 2024 to perform damage control visiting offshore banks and trust entities as part of a long-established decades long relationship assisting Defendants, Defendants' clients, and entities created by Defendants.

Urgent temporary restraints are warranted and necessary as Plaintiff is likely to succeed on the merits of its claim, and will be irreparably harmed in the absence of such relief.

## STATEMENT OF FACTS

Plaintiff is a retired television producer and horse breeder living in Wilmington, DE. Plaintiff was used by Defendant's as an "employee" in corporations solely used for tax avoidance purposes, unjust enrichment, and used intimidation, blackmail, and fraud, to induce and misrepresent "business expenditures" to continue these illicit activities after Plaintiff questioned Defendants about the legality and fraud committed.  Defendants conspired to continue the "enterprise" of deception and fraud by using Plaintiff's personal expenses, using Plaintiff as an "employee" utilizing Plaintiff's social security number, and unqualified expenditures to defraud the IRS.  Defendant's also fraudulently utilized Plaintiff to continue using the same corporation to structure corporations for the purpose of circumventing FinCen, banking rules, Foreign Agent Registration Act statutes, and immigration

---

[9] The Department of Treasury an FinCen require a Beneficial Owner Information filing establishing a beneficial owner as each "individual, if any, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise owns 25 percent or more of the equity interests of a legal entity customer and was modified and amended to commence January 2024.

laws, and the U.S. Patriot Act.

Upon Plaintiff's discovery of the criminal enterprise and scheme, and refusal to Participate and continue the enterprises, Defendant's engaged in a series of threats including the continued use in the Defendants' possession of the TransUnion TLO database to track private finances and interfere with Plaintiff's inheritance. Defendant's to this day continue to fraudulently represent to the Internal Revenue Service Plaintiff's status as an employee of corporations organized by Defendants by filing fraudulent W-2's for Ingomar Fiduciary Services, Inc. Defendants conspired to change family trust inheritances whereby Plaintiff was the sole beneficiary, continued to orchestrate fraud tying Plaintiff to corporations which had been in existence since the year 2000 and 2015, respectively. Defendants used these long-established corporations including Ingomar Fiduciary Services, Inc. and its sister corporation Ingomar Services, Inc. as well as various iterations of named entities using "Ingomar" in violation of the Foreign Agent Registration Act, committing tax fraud both in tax avoidance and improperly holding assets for foreign individuals in IOLTA and business accounts including the Barzani Family as outlined in the U.S. District, District of Columbia lawsuit. These elaborate schemes harming Plaintiff were implemented for the purpose of avoiding federal banking and money laundering statutes. and using those same corporations for illegal applications to the Immigration and Naturalization Services for worker's visas using Plaintiff's home address as a bogus place of business for foreign companies; all associated and under the umbrella of the shell corporation Defendants continue to the present and at all times relevant to Plaintiff's complaint. [10] Plaintiff, as recent as March 2024, continues to receive IRS past due notices of corporation and LLC's established by Defendants' for past due taxes over $300,000 and other corporate tax demands to

[10] Department of Homeland Security letter to Plaintiff's home in November 2023 for application worker's visa for Daiki, Inc. an Ingomar Fiduciary Services, Inc. organized company illegally using Plaintiff's home as a "place of business" for this foreign company.

Plaintiff's residence. Plaintiff has direct knowledge that specific structure created by the Defendants was implemented directly for the benefit of the Barzani family. Plaintiff continues to receive Barzani Family owned business' IRS past due notices and other correspondence to Plaintiff's residence in Delaware.  Defendants' place of business and primary residences are outside the State of Delaware.[11] Plaintiff has repeatedly demanded the rescinding of all IRS filings asserting Plaintiff as an "employee" and demanded the return of all financial holdings and assets stripped by Defendants for Plaintiff's non-compliance of Defendants' illicit and illegal actions. [12]

<u>**ARGUMENT**</u>

I.    **LEGAL STANDARD**

A preliminary injunction is an extraordinary remedy that should be granted only if Plaintiff has a reasonable likelihood of success on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction would not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest.

The identical elements apply to temporary restraining orders ("TRO's"). TROs are reserved for circumstances in which the applicant can demonstrate they face a real and immediate threat of irreparable injury before the court can consider and hear a noticed-motion for a preliminary injunction. *Id.*

1.    ***Plaintiff Has Demonstrated Likely Success on its Claims for RICO, Common Law Fraud, Fraudulent Misrepresentation, Blackmail and Extortion, and Injunctive Relief.***

A movant need only establish a prima facie case demonstrating a reasonable probability of success; they are not required to prove that success is more likely than not. *T.W. v.*

---

[11] **Attached hereto as Exhibit G**
[12] **Attached hereto as Exhibit H**

11

*S. Columbia Area Sch. Dist.*, 2020 Dists. LEXIS 176429 at *6-7 (M.D Pa. Sept 25, 2020). The court does not go into merits any farther than is necessary to determine whether the moving party established a likelihood of success. *Miller v. Mitchell*, 598 F. 3d 139, 147 (3d Cir. 2010).

Plaintiff has demonstrated more than just a reasonable probability of success on the merits here, where Defendants, undisputably, with their actions, public record filings, IRS filings, and other forensic reports provided herein as exhibits, speak to the merits of Plaintiff's complaint as well as the likelihood of success.

    *2.  Injunctive Relief is Available to Private Litigants in Civil Federal RICO Actions.*

        Courts have found injunctive relief is available to private litigants in a civil federal RICO action under 18 U.S. C. subsection 1964 (a). *See Bennett v. Berg*, 685F.2d 1053, 1064-65 (8th Cir. 1982), aff'd on reh'g, 710 F.2d 1361 (8th Cir. 1983); *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 568-69 (S.D.N.Y. 2014) (holding that private injunctive relief is available in civil federal RICO actions; *In re Managed Care Litig.*, 298 F. Supp 2d 1259, 1282-83 (S.D. Fla. 2003) (finding that the civil remedies portion of the federal RICO act authorized injunctive and declaratory relief to private plaintiffs; *Motorola Credit Corp. v. Uzan*, 202 Supp. 2d 239, 243-44 (S.D.N.Y. 2002) (finding that courts have inherent equitable powers to grant injunctive relief in civil cases, including civil RICO actions). Accordingly, the Court precedential cases had the authority to issue the TRO to preserve plaintiff's equitable remedies available their federal RICO claims.

    *3.  Plaintiff Shall Suffer Irreparable Harm Absent the Grant of Injunction Relief and a Temporary Restraining Order.*

        To show irreparable harm a plaintiff must demonstrate the potential harm which cannot be redressed by a legal ran equitable remedy following a trial; the harm must be likely to occur in the absence of an injunction. *Ramsay v. Nat'l Bd of Med. Exam'rs*, 968 F.3d 251,

262 (3ʳᵈ Cir. 2020). To show irreparable harm, "the movant must show that it is 'more likely than not' to suffer irreparable harm absent the requested relief." *M. Rae, Inc. v. Wolf,* 509 F. Supp. 3d 235, 244 (M.D. Pa. 2020).

The distribution of funds and assets to third parties including third-party trusts, once distribution an amendments occur, may be difficult or impossible to trace and recover constitutes irreparable harm. *See in re Tribune Co.*, 477 B.R. 465, 476 (Bankr. D. Del. 2012) ("[A] distribution of funds [assets] to diverse parties may constitute irreparable harm because one a distribution is made, funds [assets] may be difficult or impossible to recover." (citing *Rubin v. Pringle (In re Focus Media, Inc.)*, 387 F. 3d. 1077, 1086 (9ᵗʰ Cir. 2004); *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 351 (S.D.N.Y. 2007); *In re Netia Holdings v. Finova Gp. Inc. (In re Finova Gp. Inc.)*, C.A. No. 07-480-JF, 2007 U.S. Dist. LEXIS 80577, at *4-5 (D. Del. Oct. 31, 2007) (Appellant will have little or no recourse available to reclaim the funds [assets]…Given the significant risk of harm to Appellant, the court is inclined to give les weight to Appellant's likelihood of success on the merits.").

Delaware has recognized irreparable harm in situations when a company faces a "critical time" in which, absent an order granting specific emergent relief, the company's ability to continue as a growing concern will be put into doubt. *Icahn P'rs LP v. Amylin Pharms., Inc.*, 2012 WL 1526814 (Del. Ch. Apr. 20, 2012) (granting expedited scheduling of claim seeking injunctive relief to cause the target company to waive its advance notice bylaw because the company was facing a "critical time" after it was presented with an acquisition proposal resisted by the board, that would have delivered a substantial premium to stockholders.) Here, Defendants and their corporate holdings and beneficiary interests are alter egos' of Defendants.

Unless a restraining order is issued in this case, there is a material risk that Plaintiff will

suffer irreparable harm. Upon information and belief, without injunctive relief and restraining order, Defendant will disseminate funds and assets to third  parties domestically and internationally precluding Plaintiff the ability to have restitution and relief. Plaintiff faces a total destruction of funds, assets, and the ability achieve full restitution.

### 4.  *The Issuance of A Constructive Trust Order is an Equitable Remedy to Prevent Unjust Transfer*

A constructive trust order would provide Plaintiff an equitable remedy designed to prevent the unjust and fraudulent transfer of assets and real property by the culpable parties to third parties." *TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC*, 929 F. Supp. 2d 1255, 1262 (M.D. Fla. 2013) (citing *Bender v. CenTrust Mortg. Corp.* 51 F.3d 1027, 1029 (11th Cir. 1995).  Additionally, a constructive trust may be imposed upon funds and property to prohibit Defendants from fraudulently transferring assets to third parties. Plaintiff has demonstrated in the original Complaint and various motions before this Court the vast and complicated schemes utilized by Defendant's to defraud and transfer assets to evade U.S. law and Plaintiff's ability to return and receive an "equitable remedy which can be applied to the recovery of money when the right asserted by the plaintiff is distinctly equitable in nature." See McMahon v. New Castle Associates, 532 A.2d 601(opinion/2377575/mcmahon-v-new-castle-associates/), 608-609 (Del Ch. 1987).

### 5.  *If Injunctive Relief Is Granted, Defendant's Would Face No Harm Yet Plaintiff Would Suffer Irreparable Harm*

In consideration of the argument on hardships, the ultimate question is whether, and to what extent, Defendants would suffer irreparable harm if the preliminary injunction is issued; if temporary relief would irreparably harm defendants more than a denial

would harm the plaintiff. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 727 (3rd Cir. 2004). The injury any defendant might suffer if an injunction and order were imposed may be discounted by the fact that the defendants brought that injury upon itself. *Id* at 728. The entry of a temporary restraining order on an interim level would do nothing more than preserve the status quo on a temporary level as the parties and the Court work through the causes of actions and issues in the original Complaint including the various motions pending before the Court. Without immediate injunctive relief, Defendants will continue to remain free to disburse and convey funds, transfer real property assets and amend other trusts to subsequent third party transferees, making it difficult if not impossible for the Plaintiff to trace and recover those assets. If the Court compels Defendants to hold certain assets including the real property as stipulated in the original Complaint, in escrow and constructive trust, pending further action and orders from this Court, Defendants will not be damaged or harmed. If the Court ultimately rules that Plaintiff is not entitled to the relief sought in the Complaint or dismisses this case, Defendants shall have immediate access to the assets held in escrow and constructive trust by this Court, unimpaired (it is anticipated any escrow holding assets would be in an interest bearing account). The real property in Wilmington, Delaware and East Hampton, NY would remain in trusts with the original amendments from 2019 and 2022 respectively, would remain in the status quo. Further, Plaintiff has direct knowledge multi-million dollar assets of the shell corporation's profit sharing plan has changed plan ownership and EIN's.[13]

   In the absence of an injunction, Plaintiff will be irreparably harmed. If Defendants are Allowed to dissipate and conceal all or a vast portion of the assets during the pendency of this

---

[13] **Attached hereto as Exhibit I.** The Moore & Bruce Profit Sharing Plan according to Defendants and the plan administrator are under the same umbrella and deliberately have had EIN changes to change plan ownership and tax numbers. The plan administrator Ed Lauria in an email to Plaintiff admits the ownership had changed by direction of the Defendants.

litigation, Plaintiff will be harmed and be in a position far worse than the commencement of this action; therefore it is necessary for the various assets to be placed in constructive trust [14]The balance of injury weighs in favor of granting Plaintiff's request for emergency injunctive relief.

### 6. *The Public Interest Favors Granting the Provisional Relief*

The district court's public interest focus should be whether there is a demonstration an important public interest factor exists and would be injured by granting preliminary injunctive relief. *Kypohon, Inc. v. Disc-o-Tech Med. Techs. Ltd.*, 2004 U.S. dis. LEXIS 25170, at *16-17(D. Del. Dec. 10, 2004). Further, public dialogue and interest highlighted in Forbes and The New York Times[15] articles solidify public interest in cases involving parallel issues in Plaintiff's case intensified the recent ruling in the District Court of Alabama in declaring the Act unconstitutional but providing that opinion only applied to small business as members of the trade association involved as plaintiffs. *Nat'l Small Bus. United v. Yellen,* No. 5:22-cv-01448-LCB (N.D. Ala. 2022). If the Plaintiff demonstrates a likelihood of success on the merits and irreparable injury, it is almost certain the public interest will favor the plaintiff. *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.* 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).

In the current situation, the Plaintiff is at a grave risk of an irreparable harm which public interest seeks to avoid. Without this temporary injunctive relief, pending a decision by the court on other motions, Plaintiff stands to lose any ability to recover. See *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000) (requiring (i) irreparable harm absent an injunction and (ii) a reasonable likelihood of success on the merits and "if relevant, the court should also examine the likelihood of irreparable harm to the nonmoving party and whether the injunction serves the public interest."); *In re Uniflex Inc.*, 319 B.R. 101, 104 (Bankr. D. Del. 2005) (same);

---

[14] Attached hereto as Exhibit J.
[15] Kelly, Kate, *Judge's Ruling sets Back Law Meant to Fight Money Laundering*, New York Times, (March 3, 2024), https://www.nytimes.com/2024/03/03/us/politics/judge-ruling-corporate-transparenct-act.html

see also *AT & T Co., v. Winback And Conserve Program Inc.*, 42 F.3d 1421 1427 (3d Cir. 1994) ("As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff.").

### 7. *The Issuance of a Protective Order is Necessary to Protect Plaintiff under 18 U.S.C. 249 § 241 from Ongoing Threats*

The issuance of a Protective Order is necessary to Protect Plaintiff under 18 U.S.C. 249 § 241 and Del. Code tit. 11 § 1307. Plaintiff as alleged in the original Complaint has been harassed, threatened, and extorted by Defendants including as specified from 2017 to the present. The March 8, 2024 threat to Plaintiff, warrants a protective order preventing Defendants from entering Plaintiff's property and residence and enjoining them from entering the State of Delaware securing Plaintiff from Defendants actions either "actual or perceived" extending over state boundaries except when required by a Court of law.[16]

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court enter a temporary restraining order and preliminary injunction enjoining and restraining Defendants from distributing, transferring, amending trust documents held individually or in trust in Defendant's individual names, corporate accounts as officers and signatory authorities, 401k retirement accounts, offshore trust and bank accounts, and all real property as stipulated and detailed in the original Complaint which directly relates to Plaintiff's action and relevant thereto for a temporary restraining order, injunctive relief, and constructive trust order. Plaintiff requests the granting of a Protective Order enjoining Defendant's from entering the State of Delaware except

---

[16] U.S.C. 249 The Matthew Shephard and The James Byrd Hate Crime Prevention Act of 2009, Title 18 U.S.C. 249 was extended to fill gaps and extend the law including providing coverage of acts across state boundaries.

as required or ordered by a Court of law.

Dated: March 11, 2024

_____

/s/Mahtaub Moore
Plaintiff, *Pro se*
1 Wood Road
Wilmington, DE 19806
M22strategies@gmail.com
703-946-3704