# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| MAHTAUB MOORE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 23-988-GBW |
| | : | |
| JONATHON R. MOORE, et al., | : | |
| | : | |
| Defendants. | : | |

---

Mahtaub Moore, Wilmington, Delaware, Pro Se Plaintiff.

William Edward Green, Jr., Esq., Halloran Farkas + Kittila LLP, Wilmington, Delaware.  Counsel for Defendant Moore.

## **MEMORANDUM OPINION**

August 30, 2024
Wilmington, Delaware

**WILLIAMS, U.S. District Judge:**

## I.    INTRODUCTION

Plaintiff Mahtaub Moore, proceeding *pro se*, brings this action against Defendants Jonathon R. Moore and John and Jane Does 1-10 (individuals and corporations) by way of Complaint. (D.I. 1.) Previously, Defendant Moore's children and son-in-law were named as defendants, but they have since been terminated from the case upon Plaintiff Moore's voluntary dismissal. (D.I. 22.) Before the Court is Defendant Moore's motion to dismiss the Complaint (D.I. 7), Defendant Moore's motion to quash subpoenas and stay discovery (D.I. 23), and Plaintiff Moore's motion to transfer case to United States District Court for the District of Columbia (D.I. 26). These matters have been fully briefed. To avoid confusion, Plaintiff Moore and Defendant Moore shall be referred to as Plaintiff and Defendant hereinafter.

## II.    BACKGROUND

According to the Complaint, Defendant and others committed fraud-related offenses against Plaintiff between 2016 and 2023 in Delaware and elsewhere. (D.I. 1.) The Complaint outlines these offenses in five separate Counts: "Count 1: RICO Participation" (*id.* at 12-18); "Count IV: Blackmail and Extortion" (*id.* at 18-20); "Count II: Conspiracy to Violate RICO" (*id.* at 20-23); "Count III: Fraudulent

Misrepresentation" (*id.* at 23-25); and "Count III: Common Law Fraud" (*id.* at 25-26).

The Factual Background section of the Complaint alleges that Plaintiff was married to Defendant in October 2016. (*Id.* at 7.) Defendant's children and son-in-law, who the Complaint refers to collectively as the "Defendant's [*sic*]," attempted to prevent Plaintiff's marriage to Defendant by "engag[ing] in intimidation, blackmail, extortion, and fraud." (*Id.* at 7.) These tactics unlawfully utilized databases intended for the investigation of "missing and abducted children and child predators," but the Complaint does not specify how, when, or by whom. (*Id.*) The attempts to interfere with Plaintiff's marriage to Defendant were financially motivated. (*Id.*)

Despite the attempted interference, Plaintiff and Defendant were wed, and at some point that is not specified in the Complaint, Plaintiff became a beneficiary of several trusts of which Defendant served as trustee. (*Id.* at 11.) Plaintiff estimates the value of her marital assets and anticipated spousal inheritance to be $5,000,000. (*Id.* at 7, 11, 26.) At an unspecified point, Plaintiff was also falsely reported to be an employee of a company owned by Defendant, and her personal expenses were reported as business expenditures. (*Id.* at 7, 23-24.)

Plaintiff continued to receive "extortionist threats," and she was tracked through "the illegal use of databases" for years into her marriage to Defendant. (*Id.*

at 8; *see also id.* at 9, 14, 22-24.)  Plaintiff's "private financial and personal information" was shared with neighbors, real estate agents, and others "to embarrass, harass, and tortiously interfere with her marriage." (*Id.* at 8.)  Plaintiff also received threatening orders and directions with which she felt obligated to comply, lest she risk losing the financial assets she had acquired through marriage.  (*Id.* at 26.)

In 2019, false medical expenses and fraudulent invoices for corporate expenditures were utilized by unspecified defendants in unspecified ways to defraud Plaintiff and create a tax avoidance scheme.  (*Id.* at 9.)  When Plaintiff began questioning and investigating these expenses, unspecified defendants demanded that Plaintiff not attend family events and threatened "to expose [Plaintiff's] financials and undermine financial security given to her by her husband." (*Id.* at 9-10.)  After receiving these threats, Plaintiff suffered emotional distress, heart irregularities requiring medical attention, and an ischemic stroke. (*Id.* at 10.)

In 2023, unspecified defendants "continued to engage in a conspiracy to invade Plaintiff's privacy, defraud and extort" her. (*Id.*)  Plaintiff received a threat from unspecified defendants, apparently intended to deter Plaintiff from attending a family gathering. (*Id.*)  The same year, Plaintiff received fraudulent letters intended in unspecified ways to alter various family or marital financial structures, to Plaintiff's detriment. (*Id.* at 11, 14.)  Plaintiff alleges that the "blackmail, extortion,

fraud, and misrepresentation" by unspecified defendants caused "$2,500,000 in assets belonging to Plaintiff to be compromised" in unspecified ways. (*Id.* at 12.)

Also in 2023, Plaintiff discovered hundreds of fraudulent invoices and false corporate expenses, benefiting unspecified defendants. (*Id.* at 11.) Plaintiff then wrote a notice of termination, stating that "she would not be and never was an 'employee' of the shell corporation utilized for the false payments, tax avoidance scheme, and should not be considered as such." (*Id.* at 12.) Two weeks after writing this notice, unspecified defendants or others demanded that Plaintiff "be considered 'an employee' of the shell corporation," closed unspecified bank accounts, and ended unspecified lines of credit. (*Id.*)

## III.   LEGAL STANDARD

In reviewing a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). Because Plaintiff proceeds *pro se*, her pleading is liberally construed and her Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94.

When a complaint alleges fraud-based claims, as a preliminary matter, it must meet the relevant pleading standards set out in Federal Rules of Civil Procedure 8

and 9.  Rule 8(a)(2), for example, requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  In satisfying this requirement, a complaint can refer to defendants collectively, but it must state "enough facts to render it plausible that each defendant individually has performed at least one type of" wrongful act that would render him or her liable for the violations alleged.  *Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468, 488 (D. Del. 2021).  Put another way, the Court must be able to tell from a complaint which defendant allegedly committed which wrongful act.  *See id.*

By way of another example, Rule 9(b) requires a complaint alleging fraud-based claims to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  In satisfying this requirement, the complaint "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  "[B]oilerplate and conclusory allegations" do not meet Rule 9(b)'s particularity requirement.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) (citing *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 285 (3d Cir. 1992)).

## IV.   DISCUSSION

Although Plaintiff was allowed to proceed on her claims following screening, the Court now has the benefit of adversarial briefing and concludes that the claims

as stated in the Complaint are deficiently pled.  Defendant has challenged the Complaint on various grounds, including that the Complaint impermissibly "lumps" allegations against defendants together and that the Complaint fails to state circumstances constituting fraud with sufficient particularity.  (D.I. 8 at 16-20.) Upon review, the Court agrees that these are an appropriate bases for dismissal.

Most factual allegations in the Complaint treat all defendants as one combined whole and fail to indicate what Defendant and others have done individually.  By imprecisely lumping all defendants together, these allegations fail to satisfy the pleading standard set out in Rule 8(a)(2).  The Factual Background section of the Complaint alleges that Defendant was wed to Plaintiff in October 2016 and that Defendant served as trustee for several trusts of which Plaintiff was a beneficiary. (D.I. 1 at 7, 11.)   Beyond that, this section lacks allegations regarding what Defendant did individually.  Most factual allegations in this section are attributed to the collective group referred to as the "Defendant's [*sic*]."  (*Id.* at 7-12.)

It is unclear whether Defendant himself is even included in this collective group, as the Factual Background section's first paragraph states that Defendant's children and son-in-law, but not Defendant himself, are the collective "Defendant's [*sic*]."  (*Id.* at 7.)  Adding to the confusion regarding who is alleged to have done what, Defendant's children and son-in-law have since been terminated from the case upon Plaintiff's voluntary dismissal.  (*See* D.I. 22.)

The remainder of the Complaint outlines Plaintiff's five fraud-related Counts. (D.I. 1 at 12-26.)   All Count sections allege wrongful acts by the defendants collectively.   (*Id.*)   As in the Factual Background section, the Court cannot discern from these collective allegations what Defendant individually is alleged to have done.   Three of the Count sections, however, do clearly allege acts by Defendant in his individual capacity.   (*Id.* at 16-17, 20-21, 23-25.)   Alas, these allegations conclusively state that Defendant committed various offenses, without offering sufficient factual allegations from which to draw such conclusions.   In so doing, the Complaint fails to satisfy the pleading standard set out in Rule 9(b).

For example, "Count 1: RICO Participation" alleges that Defendant was assisted by unspecified others with a tax avoidance scheme involving false expenses and unqualified deductions and that Defendant directed and instructed unspecified others in concealing unlawful conduct to further a conspiracy to defraud Plaintiff and the government. (D.I. 1 at 16-17.) Even when viewed in the light most favorable to Plaintiff, these are "boilerplate and conclusory allegations," which do not meet Rule 9(b)'s particularity requirement. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1418.

Similarly, "Count II: Conspiracy to Violate RICO" alleges that Defendant made false statements and submitted fraudulent filings to government agencies and

that Defendant's conduct constitutes racketeering.  (D.I. 20-21.)  These are also boilerplate and conclusory allegations.

Also, "Count III: Fraudulent Misrepresentation" alleges conclusively that Defendant "made material misrepresentations in connection with tax deductions and expenditures from the unjust enrichment and fraud perpetrated by" others.  (*Id.* at 23.)  This section of the Complaint also alleges that Defendant owns a company, or companies, where a fraudulent tax scheme was utilized, which involved falsely reporting Plaintiff as an employee, changing employer names on trust accounts, and the creation of false expenses.  (*Id.* at 23-24.)  This section further alleges that Defendant knew the scheme to be fraudulent and that he represented to Plaintiff that the company tax scheme was "a method to pay into Social Security quarters toward retirement."  (*Id.* at 24.)  Finally, this section alleges that Plaintiff was harmed by the scheme because Plaintiff has had to hire tax attorneys to amend past tax returns and because Plaintiff "may have fees and underpayment fees or back taxes if the amended returns are not accepted by the Internal Revenue Service to resolve fraud perpetrated by" Defendant and others.  (*Id.* at 25.)

While this section offers more information regarding the allegations against Defendant than the previous Count sections, it still does not contain sufficiently particular facts to substantiate Plaintiff's allegations of fraud against Defendant. Simply put, additional factual information is needed to meet Rule 9(b)'s pleading

standard. This could include the dates when corporate tax fraud allegedly occurred, specific examples of false statements utilized in the scheme, details regarding how Plaintiff came to know of the fraud scheme and Defendant's specific role in it, an explanation of how Plaintiff's personal tax filings were affected by the company's fraudulent tax filings, details regarding any other harm to Plaintiff caused by the company's fraudulent tax filings, or other comparably precise information. *See Frederico*, 507 F.3d at 200.

In sum, most of the allegations in the Complaint lump the defendants together, such that the Court cannot discern what Defendant is alleged to have done individually, and the relatively few allegations that mention Defendant individually do not include sufficiently particular facts to substantiate Plaintiff's fraud claims. As such, Plaintiff has not met the pleading standards set out in Federal Rules of Civil Procedure 8(a)(2) and 9(b). The Complaint is deficiently pled, and dismissal is therefore appropriate.

Plaintiff will be given the opportunity to file an amended complaint remedying the deficiencies discussed above. If Plaintiff chooses to file an amended complaint, she may not add any new claims. If Plaintiff chooses not to timely file an amended complaint, either because she intends to file claims in another district or for any other reason, the Complaint will be dismissed without prejudice and this case will be closed.

## V.   CONCLUSION

For the above reasons, the Court will grant Defendant's motion to dismiss (D.I. 7), deny as moot Defendant's motion to quash subpoenas and stay discovery (D.I. 23), and deny as moot Plaintiff's motion to transfer case to United States District Court for the District of Columbia (D.I. 26).  Plaintiff will be given leave to file an Amended Complaint.

An appropriate Order will be entered.