IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


**MAHTAUB MOORE**, an individual

    *Plaintiff.*

                            **C.A. No. 1:23-cv-00988 (GBW)**

v.

                            **COMPLAINT FOR RICO,**
                            **FRAUD, CIVIL CONSPIRACY,**
                            **COMMON LAW FRAUD,**
                            **FRAUDULENT**
                            **MISREPRESENTATION,**
                            **BLACKMAIL AND EXTORTIO**

**JONATHON R. MOORE, an individual,**
                            **DEMAND FOR JURY TRIAL**

**And JOHN DOES 1-10**

    *Defendants.*


## PLAINTIFF'S AMENDED COMPLAINT

This Action (hereinafter the "Action" or the "Complaint"), brought by Plaintiff Mahtaub

Moore, brings this Amended Complaint for fraud, racketeering , civil conspiracy,

blackmail, extortion and civil violations of the Federal Racketeer Influenced and Corrupt

Organizations Act (18 U.S.C. § 1964(c) ("Federal Rico") and civil violations of the Delaware

Organized Crime and Racketeering Act, 11 *Del. C.* Ch. 15 ("the State R.I.C.O. Statute") against

Defendants Jonathon R. Moore and John Does 1-10 Plaintiff seeks to recover treble damages

incurred as a result of Defendants' violations and alleges as follows:

## NATURE OF THE ACTION

1.  This is an action alleging RICO, racketeering, fraud, civil conspiracy, common law fraud, fraudulent misrepresentation, blackmail, and extortion, all arising from the Defendants actions for their unjust enrichment that was designed and implemented to defraud Plaintiff and interfere with her finances, deny her beneficiary inheritance, commit tax fraud and to harass.

2.  Specifically, Defendants conspired and utilized the illegal methods to defraud Plaintiff and deny her  rightful real property and liquid assets. Defendants used these tactics to to perpetrate an international criminal enterprise herein known as Moore Criminal Enterprise for tax avoidance schemes and fraudulent corporate structures for purposes of money-laundering and circumventing U.S. laws, using Plaintiff to further the Moore Criminal Enterprise and commit fraud by putting her as a fraudulent "employee" on and around July 2016 of Defendant Moore's corporation, Ingomar Fiduciary Services, Inc., a shell company formed for the purpose of funneling illicit funds to the United States and to avoid corporate taxes.

3.  Defendant's conspired to commit fraud and hurt Plaintiff financially creating false expenses for tax avoidance, tax fraud, and other money-laundering schemes which were implemented by Defendant's use of shell corporations for foreign corporations, foreign funds, and to create false "expenditures" and deductions to unjustly enrich Defendants and to harm Plaintiff and the Internal Revenue Service.

4.  This same shell corporation upon information and belief has several iterations of spellings that have been used consistently throughout a period of 20 years.  Plaintiff became aware of this on and around April 2023 in Wilmington, Delaware.  These companies are also used for creating LLC's to hold foreign nationals' assets including the

2

assets of foreign leaders, specifically Defendant Moore's business associates Masrour Barzani and the Barzani family of Kurdistan in violation of the U.S. Patriot Act to further the Moore Criminal Enterprise's fraudulent business structures.

5.  Defendant's unlawful conduct included extortive threats by electronic communications in violation of 18 U.S.C. § 837 of for Plaintiff's non-compliance of demands made by Defendants to extort, threaten, and continue the enterprise scheme of fraud for their unjust enrichment including attempting to coerce Plaintiff in signing knowingly false and fraudulent tax returns.

6.  Plaintiff has suffered severe physical and emotional distress due to Defendant's fraud, extortive threats, and conspiracy, including great financial loss.

## THE PARTIES

7.  Plaintiff Mahtaub Moore is an individual with a primary residence in the City of Wilmington, DE, New Castle County, Delaware. Plaintiff is a retired television producer and horse breeder.

8.  Defendant Jonathon R. Moore, resides in the State of New York at 134 Three Mile Harbor Road, East Hampton, NY 11937 and is an international lawyer with specializing in offshore asset protection. During all times relevant, Moore was a resident of Delaware until his move to New York in June 2023; Moore however, insists on maintaining a Delaware driver's license. It is unknown whether Moore pays New York taxes as required upon a move to the state.

9.  Defendants John and Jane Does Numbers 1-10 are business associates, clients, corporations, and  colleagues of Defendant Jonathon R. Moore who participated in the activities and knowingly conspired to commit fraud, misrepresentation, blackmail and extortion as specified in this complaint including conspiracy.

3

## JURISDICTION AND VENUE

10. This Court has original subject-matter jurisdiction pursuant to 18 U.S C. § 1964 (c) and 28 U.S C. §1331 because this action arises, part under the Federal Racketeer Influenced and Corruption Organizations Act ("Federal RICO").

11. This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs and there is complete diversity of citizenship between Plaintiff and Defendants.

12. This Court has personal jurisdiction over Defendant Jonathon R. Moore because Moore purposefully directed actions at this forum to obtain conspire, organize, defraud, and extort Plaintiff. The exercise of jurisdiction over Jonathon Moore is reasonable at least because Moore's actions were directed to Plaintiff in this Court's jurisdiction.

13. This Court has further personal jurisdiction over Jonathon R. Moore under 28 U.S.C. §1965(b) because in any action brought pursuant to the Federal RICO statute in a U.S. District Court, this Court may cause parties residing in another district to be summoned to that district if the 'ends of justice require" it and requires this Court to exercise personal jurisdiction over Jonathon Moore.

14. This Court has personal jurisdiction over Defendant's John and Jane Does 1-10  because they purposefully directed actions at this forum to obtain conspire, organize, defraud, and extort Plaintiff. The exercise of jurisdiction over John and Jane Does 1-10 is reasonable at least because their actions were directed to Plaintiff in this Court's jurisdiction.

15. This Court has further personal jurisdiction over John and Jane Does 1-10 under 28 U.S.C. §1965(b).

4

16. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part if not the majority of the events giving rise to Plaintiff's claims occurred within this judicial district. Specifically, Defendant Moore's actions from 2016-present were from Wilmington, Delaware and his offices in Washington, DC. Venue is further proper in this District pursuant to 18 U.S.C. §1965(a) because the Defendants transacted financial, personal, communication electronic and personal means specifically, Defendant Moore's unlawful actions were transacted from Wilmington, Delaware to his office and associates in Washington, DC and other jurisdictions including Defendants John and Jane Does 1-10.

## FACTUAL BACKGROUND

17. Plaintiff is a retired television producer and horse breeder living in Wilmington, DE. She was married to a New York and District of Columbia offshore trust lawyer, Jonathon R. Moore who also was the owner of Ingomar Fiduciary Services, Inc. a Delaware shell corporation. They were married October 6, 2016 in New York City. During this period, Plaintiff was unaware that she would be employed in Defendants' corporation solely used for a tax avoidance scheme devised by Defendant's to siphon off income and take her personal expenses off as "business expenditures." In addition, since July 2023, Defendants used Plaintiff as a fraudulent employee to attempt to "legitimize" Ingomar Fiduciary Services, Inc., to create shell corporations for the purposes of continuing a 20 year money-laundering enterprise and for the use of furthering violations of the U.S. Patriot Act using Plaintiff to commit fraud. Plaintiff as recent as August 2023 became aware of such a scheme and hired tax experts, and as recent as January 2024, Defendants specifically Defendant Jonathon R. Moore continually used Plaintiff as an "employee" issuing a W-2 to Plaintiff and continued for all fiscal quarterly filings from September 2016 through January 2024 filed "fraudulent" returns using Plaintiff as a fraudulent

"employee." The commencement of placing Plaintiff as a fraudulent employee began in September 2016 when Defendant Jonathon R. Moore, individually and Defendant's John and Jane Does 1-10 each enrolled Plaintiff in the State of Delaware Unemployment Insurance system as an employee and commenced paying payroll taxes to the City of Wilmington, Delaware for the pay periods and quarters beginning September 2016.  Plaintiff has never been an "employee" of Defendant's shell company performing no work or employment from 2016 to the present.

18.  Defendant Moore and John and Jane Does 1-10 formed and continued to operate Ingomar Fiduciary Services, Inc. from 2000 to the present in the State of Delaware according to corporate filings.  The shell corporation was used to create corporations with the intent to defraud U.S. Government agencies using Plaintiff and upon information and belief had successfully operated the Moore Criminal Enterprise from 2000 to the present.

19.  Defendant Moore and John and Jane Does 1-10 engaged in and do engage in unlawful means, each of whom had knowledge, and intent, and each of whom is aware of the Criminal Enterprise's continual misconduct and has participation in the operation and used Plaintiff fraudulently as a front to continue the criminal conduct used solely to avoid compliance with U.S. laws. Defendants' association-in-fact within the meaning of 18 U.S.C. 1961(4) consisting of Defendants specifically Defendant Moore as the "mastermind" of the enterprises operations and use of Plaintiff to commit fraud.

20. The Moore Criminal Enterprise falls with the meaning of 18 U.S.C. 1961 (4) and consists of a group of "persons" associated together for the common purpose of "accumulating wealth for the Moore specifically, through both legal and illegal, avoiding the reporting of crimes to government authorities of Defendant's John and Jane Does 1-10 and hid their Criminal Enterprise from Plaintiff and have threatened and attempted to prevent or thwart Plaintiff from

6

approaching governmental authorities regarding Defendants' crimes and fraud using Plaintiff, including tax avoidance, tax corruption schemes, money-laundering, and extortion.

21. On and around January 2023, in Wilmington, Delaware, Plaintiff questioned her role as an "employee" for Ingomar Fiduciary Services, Inc. when asked to examine a suggested tax return prepared by Defendant Moore and with the cooperation of Defendants John and Jane Does 1-10 who perform regular bookkeeping services for Defendant Moore. At all times relevant, during the period between January 2023-April 2023, Plaintiff refused to sign the proposed tax return prepared by Defendant Moore which included specific tax deductions through Ingomar Fiduciary Services, Inc. and the use of Plaintiff's personal expenses as "legitimate" deductions. Plaintiff refused to sign the return without a qualified Certified Public Accountants' review of the return which Defendant Moore refused to comply with.

22. On and around April 2023 in Wilmington, Delaware, Defendant Moore presented Plaintiff with bookkeeping, bank and investment records held by Defendants John and Jane Does 1-10, which included other expenditures from non-qualified individuals including Defendant Moore's relatives. These records also included Defendant Moore's business spreadsheet for Law Offices of Jonathon Moore, PLLC showing an estimated $45 million income and "pass through" and $150,000 "income" and "loss" for Ingomar Fiduciary Services, Inc.; staggering numbers for Defendant Moore's one-person legal and financial services operations including the "sham" corporation Plaintiff was put as an employee. These acts of fraud were not only collectively performed by Defendants, but individually Defendant Moore forcibly and fraudulently through threats and extortion placed Plaintiff in severe harm which would rule her liable for any tax return filed with Plaintiff's signature. Defendants John and Jane Does 1-10 knowingly and wrongfully continued to use Plaintiff as a fraudulently employee for the Criminal Enterprise

7

filing State of Delaware Unemployment Insurance filings and payroll in the City of Wilmington, New Castle County Delaware from September 2016 to the present.

23. On and around May 2023, in Wilmington, Delaware, Plaintiff learned Ingomar Fiduciary Services, Inc., the corporation in which she was placed as a "fraudulent" employee and Defendant Moore through Ingomar Fiduciary Services, Inc., the organizing corporation beyond functions as a registered agent,, organized companies for the purpose of furthering the Criminal Enterprise including opening bank accounts at PNC Bank and Truist Bank from Wilmington, Delaware in violation of U.S. Patriot Act laws. Defendant Moore Regularly, during all times Plaintiff was a "fraudulent" employee of Ingomar Fiduciary Services, Inc., opened bank accounts and handled finances for "shell" corporations whose primary beneficial owners or partners of Defendant Moore's were not disclosed as legally required in the United States. Defendants John and Jane Does 1-10 furthered the Enterprise by handling the bookkeeping and used Plaintiff's primary residence, in Wilmington, Delaware, as the address for every corporation organized by Ingomar Fiduciary Services, Inc.

24. On and around June 15, 2023, Defendants conspired to change family trust inheritances, Powers of Attorney, 401K plans, and other financial structures by arbitrarily removing Plaintiff as the rightful beneficiary. Specifically, Defendant Moore, in Wilmington, Delaware, in an act of extortion and blackmail to perpetuate his fraudulent schemes, demanded Plaintiff sign and endorse the tax returns he solely prepared in a quid pro quo and would revoke all rightful inheritances and destroy any financial strength Plaintiff held.  During this period, Plaintiff had discovered hundreds of "invoices" and "corporate expenses" to the benefit of Defendant's which were false and unqualified as legitimate deductions.

25. On and around June 30, 2023, Plaintiff also discovered at least 30 corporations

8

organized by Ingomar Fiduciary Services, Inc. controlled by Defendant Moore and managed by

Defendants John and Jane Does 1-10 which were for at least since June 2016 involved with

massive money-laundering, tax fraud, and other violations of U.S. law; all managed from

Plaintiff's primary residence in Wilmington, Delaware.

26. Defendant Moore's unlawful actions collectively with Defendants John and Jane Does 1-

10 from at least 2016 using Plaintiff as a decoy employee included acts from Wilmington,

Delaware as follows:

a) Using Ingomar Fiduciary Services, Inc. and Plaintiff's fraudulent employee status to

defraud the IRS by using Plaintiff's personal expenses and expenses of relatives with tax

returns 2016-2023 specifically performed by Defendant Moore which include:

1. Personal trainer expenses for Plaintiff at Wilmington Country Club
2. Personal aesthetician services in Wilmington, Delaware
3. Hair salon services
4. Plane tickets for Plaintiff which were not business in nature
5. Relatives who are unqualified dependents' personal expenses using Ingomar Fiduciary Services, Inc. as a pass-through to commit tax fraud in an amount in excess of $450,000 from September 2016-January 2024.

b)      Defendant Moore using Ingomar Fiduciary Services, Inc., and perpetuating the

Criminal Enterprise using Plaintiff and acted as the middlemen to further disguise

and legitimate the corrupt payments and complicit intermediaries in facilitating

transactions, together with others, including accountants, to accomplish its

purpose did, in a continuum of complicity and enterprise corruption in an

international conspiracy, devise and engage in a multi-million dollar

scheme or course of conduct and conspiracy with affirmative, planned, and

deliberate acts of concealment and methods of obfuscation that they have

repeatedly used, in the United States and abroad, to carry out financial crimes,

9

masterminded by Defendant Moore as an agents of a foreign principal (here the

Barzani family) and their foreign sponsors, and did knowingly, unlawfully,

deliberately, voluntarily, and corruptly agree to cooperate in a fraudulent scheme

or course of conduct or shared a perfidious purpose and did demand, seek,

receive, accept, and agree to receive and accept illicit foreign funds, and did

knowingly and unlawfully combine, conspire, confederate, and agree together and

with each other to devise and intend to devise a scheme or course of conduct and

artifice to defraud and to deprive, by means of material false and fraudulent

pretenses and representations, to conceal source and ownership, knowing that the

transactions were designed in whole and in part to directly and indirectly achieve

the criminal object of the Moore Criminal Enterprise and knowing that the

property involved in the financial transactions represented the proceeds of

unlawful activity, including funds embezzled from state coffers of the

Defendant Iraqi Kurdistan Regional Government, which transactions in fact

involved the proceeds of specified unlawful activity, and using their specialized

expertise to hide the ill-gotten gains of the Moore, obscure their nefarious

activities, and employ money laundering mechanisms and did launder proceeds

generated by and did aid and abet bad acts committed by the malign actors of the

Moore Criminal Enterprise many of whom are "knew were designed to conceal

and disguise the nature, the location, the source, the ownership, and the control of

the proceeds of [the] unlawful activity," See *US v.Harmon, 474 F. Supp. 3d 76*,

83 (D.C. 2020), and played lucrative roles, and did financially profit from the

criminal activities of Defendant Moore, using Plaintiff and Plaintiff's residence in

Wilmington, Delaware,  as a center for discrete illicit financial dealings,
designed to conceal including fake representations concerning ownership
structuring, of international money laundering through a series of complex
transactions and shell or front companies with bank accounts, some opened by
Defendant Moore and with management by Defendants John and Jane Does 1-10
from Wilmington, Delaware without disclosing as required under the
U.S. Patriot Act the foreign beneficial owners or percentage of ownership of the
corporations owning said bank accounts, located in the United States and abroad,
in this country in whole or in part, repeatedly performed in furtherance of object
of the conspiracy and the conspirators' plan and scheme or course of conduct or
artifice to launder millions of dollars of ill-gotten criminal proceeds derived from
or obtained, directly or indirectly, through the commission of a crime
unquestionably in connection with a commercial activity of defendants including
the *See 28 U.S.C. § 1605(*a)(2) and numerous other anti-money laundering laws
and regulations. Specific examples include:

> 1. Defendant Moore on and around December 2016-January 2024, opened
> various bank accounts for the Barzani family using illicit proceeds at PNC
> Bank and used these accounts to hide illicit gains for the benefit of
> Defendant Moore and other clients including the Barzani's which included
> properties in the McLean, VA area, using Ingomar Fiduciary Services, Inc.
> as the original organizing company to hide profits which have triggered in
> tax year 2021 an IRS tax owed of almost $375,000 for a failure to report,
> pay and file, Form 941; all from Wilmington, Delaware. These accounts

were opened with wealth management managers at PNC's Philadelphia area offices.

2. Defendant Moore, on and around, knowingly and unlawfully, used Ingomar Fiduciary Services, Inc., and Plaintiff's employee status to associate Plaintiff with Defendants John and Jane Does 1-10 unlawful acts including wire transfer and bookkeeping of Defendant Moore's finances, Plaintiff's personal expenses, and Defendant Moore's business associates including signing real property deeds of trust at settlement companies in Fairfax, Virginia, buying and signing cashier's checks from PNC Bank made in 2016-2022 to Ft. Lauderdale Lamborghini Maserati for the purposes of laundering funds via the purchase of expensive personal property, and purchase triple-net lease properties including CVS in Miami, Florida purchased and arranged by Defendant Moore using illicit funds and organizing these structures using Ingomar Fiduciary Services, Inc. wherein Plaintiff was unknowingly associated with the Moore Criminal Enterprise. These events took place in Wilmington, Delaware at Plaintiff's primary residence.

27. On and around July 5, 2023, Defendant Moore specifically, for Plaintiff's Unwillingness to cooperate with the continual Moore Criminal Enterprise, received a letter from Defendant Moore, revoking Plaintiff's right to inheritance and funds including the majority interest in accounts and real estate property totally approximately $5,000,0000 USD.

28. These assets included real property known as Hillcroft, with an address of 1 Wood

Road, Wilmington, DE 19806 deeded under The One Wood Revocable Trust, Jonathon Moore, Trustee whose beneficiary owner and rightful successor trustee, is Plaintiff. The approximate value of the estate is $1.8 million USD. Plaintiff held the entire life insurance police through The Guardian as a Mortgage Security for the property guaranteeing upon her death the upkeep and pay off the mortgage.

29. The second real property assets compromised by the acts of Defendant Moore is the 134 Three Mile Harbor Road, East Hampton, NY 11937 vacation or second home property, deeded under the Moore Family Trust, Jonathon R. Moore, Trustee, whereby Plaintiff holds a majority beneficiary interest which included 1/3 of the property and all other agreed on expenses would be given to Plaintiff. The approximate value of Plaintiff's share is $500,000 in the current market.

30. Defendant's acts caused another $2,500,000 in assets belonging to Plaintiff to be compromised through their continued blackmail, extortion, fraud, and misrepresentations. Those accounts are through Wells Fargo in a 401K account, Vanguard Investments, Janus, PNC Bank, as well as other mutual funds. The 401k is held in the Moore & Bruce Profit Sharing Plan, PLLC.

31. Defendant Moore specifically, from September 2018-present, from Wilmington, Delaware instructed Defendants John and Jane Does 1-10 to change the Employer Identification Number and entity of the Moore & Bruce Profit Sharing Plan to Ingomar Fiduciary Services, Inc., in furtherance of diverting attention away from Defendant Moore's unlawful conduct and hide the true value of the plan.  In September 2022, Defendant Moore instructed John and Jane Does 1-10 to twice change the EIN number of any plan and trust agreement which Plaintiff had all rights to. This was discovered by Plaintiff through IRS 5500 filings with the Department of

Labor in 2023 masterminded by Defendant Moore singularly to use Plaintiff's fraudulent "employee" status and continue siphoning illicit funds earned by Defendant Moore to Ingomar Fiduciary Services, Inc.

32. On and around July 16, 2023, Plaintiff wrote a notice of termination she would not be and never was an "employee" of the shell corporation utilized for the false payments, tax avoidance scheme, and should not be considered as such. This letter was directed to Defendant Moore specifically and sent to Defendants John and Jane Does 1-10 via email. Defendant Moore as recent as January 2024, issued a fraudulent W-2 to Plaintiff, despite Plaintiff's demand to be removed as an "employee" of Ingomar Fiduciary Services, Inc.

33. On and around July 30, 2023, Defendant Moore specifically organized and directed Defendants John and Jane Does 1-10  conspiring to remove Plaintiff from any financial assets by cutting off credit cards, closed bank accounts, and demanded Plaintiff be considered "an employee" of the shell corporation for the furtherance of their unjust enrichment and tax avoidance scheme and money-laundering enterprise.

### FIRST CLAIM FOR RELIEF
### Federal RICO 18 U.S.C. 1964(c)
### (All Defendants)

34. Plaintiff incorporates by reference and realleges paragraphs 1 through 33 set forth above.

35. Plaintiff alleges that Defendants' conduct, and the conduct of each Defendant named herein, constitutes "racketeering" as set forth in 18 U.S.C § 1964 (c).  Specifically, Congress has defined "racketeering" to include wire fraud, fraud by means of electronic transmissions and over wire.  The Defendants here engaged in multiple instances of fraud including twice submitting fraudulent invoices, false documents, and fraudulent

14

communication to defraud Plaintiff.

36. As detailed below, Plaintiff alleges three different causes of action for federal RICO violations. In summary, Section 1962(c) provides relief against parties who engage in a pattern of racketeering activity, Section 1962(a) provides relief against parties who use income and funds generated by fraud through a pattern of racketeering activities against the plaintiff, and Section 1962(d) provides relief against those who conspire to violate the racketeering laws. Defendants are liable under each of these three sections of the statute.

37. 18 U.S.C. § 1964(c) allows "any person injured in his property by reason of a violation of section 1962(c) of this chapter to "sue therefor in any appropriate United States district court and shall recover threefold the damages he sustain and the cost of the suit, including any other reasonable relief.

**COUNT 1**
**RICO Participation- 18 U.S. C. 1964 (c), 1962 (c)**

38. Plaintiff incorporates by reference and realleges paragraphs 1-37 set forth above.

39. 18 U.S.C.§ 1962(c) makes it "unlawful for any person employed by or associated with any enterprise or individual action engaged in or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…" 18 U.S.C. § 1962(c).  18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or Associated with any enterprise engaged in, or the activities of which affect, interstate or f foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . " 18 U.S.C. § 1962(c).

40. Each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does

15

hold, "a legal or beneficial interest in property."

41. Defendants' activities include at least two acts of racketeering activity since 2018. Accordingly, Defendants' conduct constitutes a "pattern" of racketeering activity. 18 U.S.C. § 1961(5).

42. One such act took place on July 2016, wherein Defendant Moore individually placed Plaintiff as a fraudulent "employee" with the State of Delaware's Unemployment Insurance filings and with the City of Wilmington's payroll in when Defendant's, in furtherance of the activities, purpose and scheme, to obfuscate the true nature of the purpose of Ingomar Fiduciary Services, Inc., and it's unlawful activities of tax avoidance and money-laundering to open bank accounts for foreign nationals

43. A second such act took place on April 12, 2023 and again on July 5, 2023, in Wilmington, Delaware when Defendant Moore individually in furtherance of the Moore Criminal Enterprise activities, purpose and scheme falsely and fraudulently through blackmail and extortion for Plaintiff's refusal to sign tax returns which were fraudulent or non-compliance of being used as a fraudulent "employee" of Ingomar Services, Inc., included the revocation of rights to bank accounts and real property for Plaintiff's refusal to further Defendant Moore's unlawful and fraudulent conduct.

44. Since July 2016, Defendants formed an association-in-fact Enterprise, described herein, within the meaning of 18 U.S.C. § 1961(4).

45. The Defendants have formed an ongoing organization that functions as a continuing unit. This was created and used as a tool to effectuate Defendants' pattern of racketeering activity.

46. All Defendants John and Jane Does 1-10 specifically, carried out Defendant Moore's

16

Criminal Enterprise by filing payroll taxes, State of Delaware filings, and handling bank

accounts and agreed to and did conduct and participate in the conduct and pattern of racketeering

activity including schemes to commit financial fraud as defined by 18 U.S.C. § 1343, and for the

unlawful purpose of intentionally defrauding Plaintiff.

47. Defendant's failure to disclose the real use of funds to Plaintiff, the Federal Bureau of

Investigation, and the Federal Trade Commission, and to how private financial

information was disseminated and obtained was done intentionally and with full

knowledge of all relevant facts and was fraudulent.

48. Defendants used the electronic communications through cellular, email, and mail for

the transmission, delivery, or shipment of the following by the Defendants or third parties, all

of which are related to the Defendant's scheme and they were foreseeably caused to be

sent as a result of Defendant's continual and aggressive scheme:

> -Threatening phone calls to Plaintiff's cellular phone account.
> -Dissemination and distribution of Plaintiff's private financial information to third-parties.
> -Wires and fund transfers between Defendant Moore using Plaintiff as a fraudulent employee.
> - Email and telephone communications by Defendant Moore to orchestrate threats against Plaintiff.
> -Scheming and organized the destruction of Plaintiff's reputation and financial well-being by an aggressive plan to ensure her removal of all beneficiary accounts and property she would have inherited totally almost $5,000,000 USD.
> -Developing and implementing with the unjust enrichment the continual tax avoidance scheme perpetrated to underreport income and use shell companies to take unqualified deductions. Plaintiff was fraudulently induced by this scheme.

49. Defendants used the Internet and other electronic facilities to carry out the

funding scheme and to conceal their ongoing fraudulent activities.

50. At all times discussed herein, Defendants have been involved in a plan to scheme

or defraud; have had the intent to defraud and have willfully participated in the scheme to

defraud with actual knowledge of its fraudulent nature and with specific intent to defraud; and could have reasonably foreseen that interstate wires would be used; and actually used interstate wires and electronic methods to further Defendants' scheme.

51. The Defendants engaged in and affected interstate commerce by way of said wire, bank, and tax fraud.

52. Defendants Jane and John Does 1-10 fraudulently used Plaintiff to enrich Defendant Moore engage in a tax avoidance scheme whereby false expenses and unqualified deductions were claimed in order to defraud Plaintiff and the Department of Treasury. These schemes were employed by Defendants to assist in the unjust enrichment for the Defendants benefit and for the purpose of conspiring to defraud Plaintiff and the Internal Revenue Service, specifically by using corporations to funnel funds which in turn would be expenditures and deductions without reporting income to the IRS.

53. The wire and fund transmissions described herein were made in furtherance of Defendant's scheme and common course of conduct.

54. To achieve their common goals, Defendant Moore knowingly and willfully concealed from the public, the Federal Bureau of Investigation and the Federal Trade Commission, the Internal Revenue Service, and Plaintiff the unlawfulness of their conduct, which was committed at the instruction of, and through the directions of Defendant Moore, directed Defendants John and Jane Does 1-10 in furtherance of the conspiracy to defraud Plaintiff and the named government agencies.

55. As a direct and proximate consequence of the conduct of Defendants and each of Them as alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $2,500,000 said damages

to be proven at the time of trial.

56. Because of Defendants' violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

<strong>Violation of 18 U.S.C. § 1962(a)</strong>

57. Plaintiff incorporates by reference and realleges paragraphs 1 through 61 set forth above.

58. 18 U.S.C. § 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).

59. As alleged above, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

60. As alleged in the preceding section, Defendants' conduct constitutes a "pattern" of racketeering activity. 18 U.S.C. § 1961(5).

61. As alleged in the preceding section, on or around July 2016 through the present, And specifically detailed with each Defendant's acts individually and collectively, formed the "Enterprise" to effectuate Defendants' pattern of racketeering activity.

62. All Defendants agreed to and did use income from defrauding Plaintiff received directly from a pattern of racketeering activity to control, establish and operate their, which was engaged in and affected interstate commerce, including fraud as defined by 18 U.S.C. § 1343,

19

and for the unlawful purpose of intentionally defrauding Plaintiff.

63. The fraud committed by Defendants is set forth in the preceding section and is incorporated by reference herein.

64. As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiff has been injured in its business and property, causing Plaintiff to suffer monetary damages in an amount not less than $5,000,000 said damages to be proven at the time of trial.

65. Because of Defendants' violations of 18 U.S.C. § 1962(a), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF
### (Defendant Jonathon R. Moore and John and Jane Does 1-10)

66. Plaintiff incorporates by reference and realleges paragraphs 1 through 65 set forth above.

67. Plaintiff alleges that Defendant J. Moore's and John and Jane Does' 1-10 conduct, and the conduct of each Defendant named herein, constitutes racketeering as specifically, Delaware has defined "racketeering" to include such acts as perjury and false swearing. The Defendant here engaged in multiple instances of perjury and false swearing, including tax filings to the Internal Revenue Service, and the Department of the Treasury, by giving false information, not declaring income and inducing Plaintiff to be included in a tax scheme to defraud the named governmental agencies from July 2016 through the present.

68. Defendant Jonathon Moore and John and Jane Does 1-10 also submitted statements to these government agencies including at the direction of Defendant Moore statements to the State

of Delaware and the City of Wilmington, New Castle County, Delaware since July filed forms

and did not properly report under rules of the IRS filed false tax filings accurately from 2016 to

the present  to further their scheme. Specifically, and individually Defendant Moore

masterminded the plan to defraud Plaintiff.

**COUNT II**
**CONSPIRACY TO VIOLATE RICO PURSUANT TO 18 U.S.C. § 1962(d)**
**(Defendants Jonathon Moore and John and Jane Does 1-10)**

69. Plaintiff incorporates by reference and realleges paragraphs 1 through 88 set

forth above.

70. This claim for relief arises under 18 U.S.C. 1962 (d) which provides that "[i]t shall be

unlawful for any person to conspire to violate any of the provisions of subsection (a), (b),

or (c) of this section."

71. Defendants at all relevant times, is and has been a "person" within the meaning of

these sections because each Defendant is capable of holding, and does hold, "a

legal or beneficial interest in real or personal property."

72. At all times relevant hereto, beginning in or around July 2016, with the placing of

Plaintiff as a fraudulent "employee" of Ingomar Fiduciary Services, Inc., a Delaware corporation

and continuing at least through the filing of this complaint, Defendant Moore conducted and

participated in the affairs of an enterprise through a pattern of racketeering activity, in

violation of 18 U.S.C. §1962 (d).

73. On or around July 2016, Defendant Moore instructed and ordered the cooperation of

Defendants John and Jane Does 1-10 to file false forms to the State of Delaware and the IRS and

formed an association-in-fact Enterprise, described herein as the Moore Criminal Enterprise,

within the meaning of 18 U.S.C. §1962 (d)

21

74. One such act took place, in January 2023, when Defendant Moore in furtherance of the Moore Criminal Enterprise conspired to claim false medical expenses of relatives use Plaintiff as a continuing fraudulent "employee" using Plaintiff's personal expenses to divert tax liabilities from Ingomar Fiduciary Services, Inc., and defraud Plaintiff with the purpose of siphoning illicit proceeds from Defendant Moore's business ventures and associates as described herein.

75. A second, third, and fourth such act took place on July 3, 4, and 5th 2023, when Defendant Moore, individually, in furtherance of the activities, purpose and scheme of the Criminal Enterprise, threatened Plaintiff if Plaintiff refused to sign tax returns and not comply with Defendant Moore's scheme of using Plaintiff's fraudulent "employee" status to legitimize Ingomar Fiduciary Services, Inc., money-laundering and tax fraud schemes which include all returns filed wherein Plaintiff is associated, orchestrated by Defendant Moore from 2016 to the present of Ingomar Fiduciary Services, Inc., personal tax returns, unemployment filings with the State of Delaware and the City of Wilmington. Defendant Moore individually threatened Plaintiff with black and extortion for non-compliance with Defendant Moore's demands And remove her as the beneficiary of real property 1 Wood Road, Wilmington, DE 19806 and 134 Three Mile Harbor Road, East Hampton, NY, 11937, and attempt to change EIN numbers of accounts rightfully Plaintiff's totally $5,000,000.

76. As set forth above, Defendants John and Jane Does 1-10, knowingly, willingly, and unlawfully agreed to Defendant Moore's demands and harm of Plaintiff and continued to participate directly or indirectly in the conduct of the affairs and activities through a pattern of racketeering activity, including acts of bank and electronic fraud and extortion in violation of 18. U.S.C. § 1341 and 1343. These acts by Defendants John and Jane Does 1-10 included the hiding

22

and changing of EIN numbers related to Ingomar Fiduciary Services, Inc. with IRS Form 5500 in September 2022. Defendants objectively organized their conspiracy of the numerous and substantial RICO violations by at least one member of the conspiracy by acts, words, and correspondence.

78. As set forth above, each Defendant committed at least one overt act of racketeering activity or other wrongful activity in furtherance of such conspiracy including the continual and constant practice to defraud Plaintiff of money and other property interests through threats and illegal use of electronic communication and databases to harm and defraud Plaintiff, the Federal Bureau of Investigation, and the Federal Trade Commission, and the Internal Revenue Service.

## COUNT III
## FRAUDULENT MISREPRESENTATION
### (Against Defendant Jonathon Moore and John and Jane Does 1-10)

89. Plaintiff realleges each and every allegation set forth in Paragraphs 1-88 and incorporates them by reference herein as if fully set forth.

90. As stated above Defendant Moore used Plaintiff from July 2016 to the present and made fraudulent misrepresentations in connection with using Plaintiff as an "employee" for tax tax fraud, money-laundering and specifically from July 2016 through the present associating Plaintiff with Ingomar Fiduciary Services, Inc., a Delaware shell corporation with the purpose of creating bank accounts at PNC Bank and Truist to obfuscate true beneficiary owners unqualified to own accounts in the United States and specifically to transfer and laundering illicit proceeds orchestrated by Defendant Moore in real estate transactions through structures organized by Ingomar Fiduciary Services, Inc.

91. The misrepresentations include single and specific acts as follows:

a. Defendant Moore's use of Plaintiff's personal expenses to siphon and hide Ingomar Fiduciary Services, Inc. nature of business and assets including real estate transactions avoiding IRS filing and taxes due in 2022 of Form 941 in an LLC created by Ingomar Fiduciary Services, Inc. and Defendant Moore of over $375,000.

b. False claims as to the nature of the business conducted Ingomar Fiduciary Services, Inc., including Barzani Family money-laundering schemes and other defrauding of the U.S. Government by fraudulent contract filings with the Department of Defense, Minority Owned Small Business Administration  and fraudulently misrepresented and used Plaintiff for the interest of the Moore Criminal Enterprise.

c. Defendant J. Moore had structured a 100% wholly-owned corporation over 20 years ago with other iterations similar in name unbeknownst to Plaintiff whereby she would be made an employee.  Plaintiff did no work for the corporation/sole member LLP owned by Defendant Moore.

d. These corporations and LLP's siphoned off income from one to another and took the false expenses as corporate expenditures which were not reported to Plaintiff or the Internal Revenue Service. Defendants J. Moore and John and Jane Does 1-10 were fully aware of this tax scheme and developed it to misrepresent the truth to Plaintiff.

e. This tax scheme was not incompliance with IRS rules and would be considered fraud on an intrinsic and extrinsic level.

f. Plaintiff was never informed of the true purpose of Ingomar Fiduciary Services, Inc., and this was fraudulently misrepresented Plaintiff would be used to legitimize Ingomar's function and operations of illegally opening bank accounts at PNC and Truist from July 2016 through the present for the benefit of Defendant Moore and his business associates which include the Barzani family.  Ingomar Fiduciary Services, Inc. specifically was the organizer for Golden Eagle Global, Inc. a front corporation for the benefit of Defendant Moore and the Barzani family of Kurdistan for the purposes of laundering funds and holding other entities formed by Defendant Moore individually, to hide illicit funds through real estate holdings in the United States specifically several condos in McLean, VA, CVS in Miami, Florida, Red Lobster franchises and Chase Bank buildings in Orange, Texas, and numerous real estate holdings with an estimated worth of over $100 million USD.

g. Various corporations were used changing the employer names on Plaintiff's beneficiary assets to Plaintiff in furtherance of continuing the tax scheme. Defendant's J. Moore and John and Jane Does 1-10 masterminded the scheme by

changing employer names and EIN numbers from trust accounts and other trust assets including retirement plans and corporate accounts to defraud Plaintiff.

h. The actions above are found in IRS forms 5500 as the Profit Sharing Plan of Moore & Bruce which was to defraud Petitioner by the continual changing of EIN's and plan names.

i. Failing to disclose the true nature and operations of the corporations and placing Plaintiff as an employee to perpetrate the Criminal Enterprise placed in financial and legal jeopardy. These misrepresentations and omissions by Defendant Moore and John and Jane Does 1-10 were known to them to be false and untrue.

92. The foregoing was a material misrepresentation made to Plaintiff that Defendant Moore made was done intentionally, knowingly, and with reckless disregard for the truth.

93. As a direct result, Plaintiff has been injured property by the fraudulent misrepresentations. Plaintiff by Defendant Moore's representation has signed tax returns 2016-2022 making Plaintiff liable for claw-back of taxes, fees, fines and penalties by the IRS. Plaintiff, to protect herself legally will have to file Innocent Spouse status with the IRS as Ingomar Fiduciary Services, Inc., is a separate entity the entire expenditures from 2016 through 2022 were fraudulent and placed on Plaintiff's individual joint return with Defendant Moore to siphon income off the personal return in a tax avoidance scheme. This also included deductions from other income to Defendant Moore, unknown to Plaintiff, using Defendant Moore's relative's personal expenses to further the tax avoidance scheme.

94. Defendant Moore's actions were outrageous and committed with willful disregard or indifference to Plaintiff and Plaintiff seeks punitive damages against Defendant Moore and John and Jane Does 1-10 for their individual participation filing payroll reports, managing Defendant Moore's finances and using Plaintiff for the purpose of furtherance of the Moore Criminal Enterprise.

## COUNT IV
## COMMON LAW FRAUD
### (All Defendants)

94. Plaintiff incorporates by reference all allegations 1-104 in this Complaint and restates them as if fully set forth herein.

95. As set forth fully herein, Defendants made the following materially false representations to Plaintiff: a) expenses paid for by Plaintiff's assets were a sham and used for unjust enrichment and not the purposes solely expressed; b) Defendants utilized these funds with the intent of defrauding Plaintiff and the Internal Revenue Service c) Defendants knew the Criminal Enterprise scheme would hurt Plaintiff would be further used for tax avoidance purposes by shielding the income as and fraudulently in furtherance of the tax scheme continued to use Plaintiff for illegal expenditure deductions from shell corporations to avoid paying taxes which would result in liability and fraud to Plaintiff and the Internal Revenue Service.

96. Defendants knew the misrepresentations were materially false when made and intended Plaintiff would rely on the legitimacy of the expenses and the use of corporations Defendants conspired to use for their tax scheme and unjust enrichment using Plaintiff's assets.

## COUNT V
## BLACKMAIL AND EXTORTION
### (Defendant Moore 18 U.S.C. 873)

97. Plaintiff incorporates by reference all allegations 1-107 in this Complaint and restates them as if fully set forth herein. As set forth fully herein, Defendants conspired and committed Blackmail and Extortion Pursuant to 18 U.S.C. 873 and committed the following acts:

26

a) Making threatening calls and communication to order Plaintiff's Cooperation with the Criminal Enterprise in January 2023. A second incident on July 3, 4, and 5 2023, demanding and threatenng Plaintiff with compliance for the Enterprise or risk losing financial assets including real property totally $5,000,000.

b) Demanding and threatening Plaintiff's loss of financial assets by demanding Plaintiff continue a tax avoidance scheme, be an employee of a shell corporation, and demand Plaintiff's silence of the truth to government agencies including the Internal Revenue Service and other government agencies including the Federal Bureau of Investigation if questioned or subpoenaed. These threats took place on and around August 25-26, 2023 and continue to the present.

d) Defendant's demanding Plaintiff's silence or risk retaliation to destroy Plaintiff's financial security in the amount of $5,000,000 on the knowledge Defendant Moore has used Plaintiff and her role as an "employee" as well as for tax avoidance of the multiple corporations organized and controlled by Defendant Moore to further money-laundering and tax avoidance schemes created by Defendant Moore.

## JURY DEMAND

89. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury of all

issues so triable that are raised herein or which hereinafter may be raised in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1. Finding that all defendants are jointly and severally liable for all damage caused

to Plaintiff;

2. Awarding Plaintiff monetary damages in an amount not less than $5,000,000 said

amount to be proven at trial;

3. Awarding Plaintiff enhanced (treble) monetary damages pursuant to 18 U.S.C.

§ 1964(c), Delaware statutory law, and the common law of Delaware.

4. Awarding Plaintiff its litigation expenses, including reasonable attorneys' fees,

costs, and disbursements;

5. Awarding Plaintiff punitive damages in the sum of not less than $5,000,000 or

an amount otherwise to be decided by a jury; and

6. Granting such other relief as the case may require or as may be deemed proper

and equitable.

Respectfully Submitted

Dated: September 30, 2024

By: _____

Mahtaub Moore

*Pro Se*

1 Wood Road

Wilmington, DE 19806

703-946-3704

M22strategies@gmail.com

Certificate of Service

I, Mahtaub Moore, *Pro se*, have served Plaintiff's Amended Complaint, on September 30, 2024,

via electronic mail to Defendant's counsel, William Green, Esq., Halloran, Farkas, & Kittila, at

wg@hfk.law.

Date: Sept 30, 2024

September 30, 2024

Signed:

Mahtaub Moore, *Pro se*

29